## A97A1457. TAYLOR v. THE STATE.
### (491 SE2d 417)

BLACKBURN, Judge.

After a bench trial, Patrick John Taylor a/k/a John Patrick Taylor, pro se, appeals his conviction of burglary. Taylor contends that the trial court erred in failing to grant his motion to suppress evidence.[1]

1. "When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them. (Citations and punctuation omitted.) *Allenbrand v. State*, 217 Ga. App. 609 (1) (458 SE2d 382) (1995)." (Punctuation omitted.) *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996).

Taylor was stopped and questioned in a motel parking lot in Tennessee based on a tip that Taylor possessed drugs, which tip was given to police in a nearby town. Taylor was arrested after a pat-down search revealed drugs in three prescription containers on his person. The tipster had described Taylor and another female guest in the motel room who was registered under the tipster's name. The tipster also gave the police consent to search such motel room. Upon a search of the motel room, the police found more drugs and drug para-

---

[1] In his enumerations of error, Taylor asserts that 17 errors require reversal of his conviction; however, only those enumerations of error addressed in his brief with argument and citation to authority will be addressed. See Court of Appeals Rule 27 (c) (2).

phernalia. A drug dog alerted to a locked briefcase, and a search of the briefcase revealed some notebooks, a money belt, three marijuana cigarettes, some jewelry, and burglary tools. During interviews with the police, after his arrest, Taylor admitted involvement in motel burglaries in Georgia. Taylor's admissions formed the basis for his underlying burglary conviction.

By his motion, Taylor sought to suppress the notebooks and burglary tools found in his locked briefcase. Taylor contends that no exigent circumstances existed sufficient to support the warrantless search of his locked briefcase. Although we agree that no exigent circumstances required that the officers conduct a search of Taylor's locked briefcase at the scene, we agree with the State that the contents of the briefcase would have been inevitably discovered in an inventory search, and therefore, Taylor's motion to suppress was properly denied.

The United States Supreme Court has recognized that the "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Nix v. Williams*, 467 U. S. 431, 446 (104 SC 2501, 81 LE2d 377) (1984). Therein, the Supreme Court allowed the introduction of evidence illegally obtained based on the theory that the evidence would have inevitably been discovered without reference to police error or misconduct. Id. at 448. Taylor's reliance on *United States v. Chadwick*, 433 U. S. 1 (97 SC 2476, 53 LE2d 538) (1977) is misplaced. Therein, the Supreme Court determined that, absent consent, federal agents were required to have a warrant to search a footlocker they seized pursuant to an arrest. Id. at 11. The agents transported the footlocker to a federal building and waited over an hour before opening it. Id. at 4. The agents did not obtain a warrant or consent to search the footlocker. Id. Therein, however, the issue of inevitable discovery was not raised, and there was no evidence regarding inventory procedures. In fact, the Supreme Court specifically distinguished inventory searches from the actions taken by the federal agents therein. Id. at 10, n. 5. In the present case, it is undisputed that Taylor's briefcase would have been inventoried upon Taylor's booking at the police station. Trooper Snow testified that they would have taken the briefcase to the station with Taylor where they would have opened the briefcase for an inventory search.

(a) Taylor's argument that his briefcase could have been inventoried as "one locked briefcase" is without merit. In *Staley v. State*, 224 Ga. App. 806, 807-808 (1) (482 SE2d 459) (1997), we determined that the police department policy regarding the opening of closed containers during inventory searches governed the reasonableness of an inventory search. See also *Florida v. Wells*, 495 U. S. 1 (110 SC 1632, 109 LE2d 1) (1990). In the present case, Trooper Snow's testimony

established that the locked briefcase would have been opened in order to inventory its contents.

(b) Taylor's contention that the search of the briefcase was the result of his improper arrest in the parking lot is also without merit. Pretermitting the appropriateness of Taylor's arrest in the parking lot for the drugs found on his person,[2] Taylor could have been detained while the officers searched the motel room. After searching the motel room pursuant to the consent obtained from the registered guest, Taylor could have been arrested for the drugs in the motel room.

"Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop [a person] and conduct a limited investigative inquiry . . . without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. . . . *State v. McFarland*, 201 Ga. App. 495, 496 (411 SE2d 314) (1991). Whether there are reasonable grounds sufficient to justify an investigatory stop is judged in the totality of the circumstances. *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990); *Britton v. State*, 220 Ga. App. 120, 122 (469 SE2d 272) (1996)." (Punctuation omitted.) *Rider v. State*, 222 Ga. App. 602, 603 (475 SE2d 655) (1996).

At the motion to suppress hearing, Trooper Michael Allen with the Tennessee Highway Patrol testified that on September 4, 1994, he investigated a one-car accident. Victoria Ambrose was alone at the scene of the accident. Ambrose consented to a search of the car, and Trooper Allen discovered, among other things, two pistols, drug paraphernalia, and drug residue. Ambrose told Trooper Allen that she was coming from the Holiday Inn in Harriman and that she was en route to Nashville to obtain some dilaudid. Ambrose stated that a motel room at the Holiday Inn was registered in her name, and she gave consent to search the room. She also described the two people who were sharing the motel room with her and who were still located at the motel. The officers on the scene called the Holiday Inn and confirmed that a room was registered in Victoria Ambrose's name. The officers faxed the signed consent to search the motel room to

---

[2] Because the officer who conducted the pat-down search did not testify, we cannot determine whether Taylor's arrest in the parking lot falls within the "plain feel" doctrine. See *Seaman v. State*, 214 Ga. App. 878, 879 (2) (449 SE2d 526) (1994) (citing *Minnesota v. Dickerson*, 508 U. S. 366 (113 SC 2130, 124 LE2d 334) (1993) (if contraband is identified through an officer's sense of touch in the course of a lawful *Terry* pat-down, it may be seized).

officers located closer to the Holiday Inn.

Trooper Gary Snow with the Tennessee Highway Patrol testified that he received information from the officers at the scene of Ambrose's accident that Ambrose gave consent to search her motel room at the Holiday Inn. Trooper Snow testified that as he and two other officers were going to the motel room from the motel office, they noticed Taylor, who fit the description given by Ambrose, coming around the end of the building.

The initial stop of Taylor was based on Ambrose's admissions, i.e., that drugs were in her motel room, and Ambrose's tip, i.e., her description of the room's other occupants, and on the officer's confirmation of Ambrose's statement that the motel room was registered in her name. This information justified the officer's initial stop of Taylor while the room was being searched. The discovery of drugs in the motel room supported Taylor's arrest.

(c) Taylor's contention that the warrantless search of the motel room was improper is also without merit. Even assuming that Ambrose had vacated the motel room, as Taylor contends, the evidence supports the trial court's determination that the officers at the scene reasonably believed that the consent given by Ambrose was valid.

"In *Illinois v. Rodriguez*, [497 U. S. 177 (110 SC 2793, 111 LE2d 148) (1990)], the Supreme Court held that a warrantless search based on consent . . . could nonetheless be upheld if the law enforcement officer conducting the search *reasonably* albeit erroneously believed the consent given was valid. Resolution of this issue requires a determination by the factfinder, applying an objective standard, that the facts available to the officer at the time of the search would warrant one of reasonable caution in the belief that the consenting party had authority over the premises." (Citation and punctuation omitted; emphasis in original.) *State v. Stewart*, 203 Ga. App. 829, 830 (418 SE2d 110) (1992).

The officers at the motel had a signed consent to search form from the guest registered to the motel room. Under the circumstances of this case, this evidence supports the trial court's determination that the officers reasonably believed they had valid consent to search the motel room. Therefore, the trial court did not err in denying Taylor's motion to suppress the evidence. See id.

2. As Taylor's remaining enumerations of error are not supported by argument and citation of authority they will not be addressed. See Court of Appeals Rule 27 (c) (2).

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED AUGUST 13, 1997 —
RECONSIDERATION DENIED SEPTEMBER 2, 1997 — 

Patrick J. Taylor, *pro se.*
*Kermit N. McManus, District Attorney*, for appellee.