## S04A0971. BROWN v. THE STATE.
### (604 SE2d 503)

HINES, Justice.

Antonio Lamar Brown appeals his convictions for felony murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the fatal shooting of James Smith. Brown complains of discovery violations by the State, the trial court's failure to conduct an in camera inspection of the State's file, the restriction of cross-examination of a witness, certain comments by the State during closing argument, and portions of the trial court's instruction to the jury. Finding the complaints to be without merit, we affirm.[1]

---

[1] The crimes occurred on November 26, 1996. On April 28, 1998, a Fulton County grand jury indicted Brown, along with Sertonius Isaac Harris, Terrance Javon Curry, and Tridarryious Mondra Carter, for: Count 1 – the malice murder of James Smith; Count 2 – the felony murder of James Smith while in the commission of aggravated assault; Count 3 – the aggravated assault of James Smith; Count 4 – the aggravated assault of Anthony Allen by pointing a pistol at his head, thereby placing him in reasonable apprehension of immediately receiving serious bodily injury; Count 5 – the aggravated assault of Anthony Allen by pointing a pistol at his head and demanding money from him; Count 6 – burglary; Count 7 – the armed robbery of Anthony Allen; and Count 8 – possession of a firearm during the commission of a felony. Brown, Harris, and Carter were tried jointly before a jury October 22-November 2, 1998. Brown was found guilty on Counts 2, 3, 4, and 8, and not guilty on the remaining counts;

The evidence construed in favor of the verdicts showed that James Smith, Beticto Norris, and Anthony Allen were sharing a duplex used as a rooming house in Fulton County. People often came to the duplex to buy or use drugs and to engage in sexual activity. On November 26, 1996, Smith got home from work around 6:30 p.m. and insisted that Norris leave. Norris left, walked down the street, and saw a red Chevrolet truck drive twice past the rooming house. Allen saw Sertonius Isaac Harris and Tridarryious Mondra Carter pull into the driveway in a red truck. They asked for "Jake," the local drug dealer, and Allen told them Jake was not there. Twice more, an unidentified man came to the door, asked for Jake, and Allen told each man that Jake was not there. Later, Carter came inside, asked for Jake, and put a gun to Allen's head. Allen saw Brown, who was armed, and three more men enter. Carter and Allen argued, and Smith opened his door to ask what was happening. The men pushed Smith back into his room. Allen heard two shots. Norris returned and saw Brown, Harris, Terrance Javon Curry, and Carter, run out of the house, jump into the red truck, and leave.

Smith stated that he had been shot and that he had taken the weapon from Brown, the man who shot him; Smith fired the weapon at the fleeing men. Smith later died from his gunshot wounds. He had been shot in the left side of his front lower chest, resulting in substantial bleeding and loss of blood pressure.

1. The evidence was sufficient to enable a rational trier of fact to find Brown guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Brown complains that the State repeatedly failed to provide timely discovery, alleging that it did not turn over photos, did not list witnesses, and did not provide copies of warrants, documents, and Georgia Crime Information Center ("GCIC") reports; he requests reversal of his convictions because of this alleged "pattern of discovery abuses." However, the complaints are unavailing. In regard to all but one of the discovery matters alluded to by Brown, he has completely failed to allege, much less show, how he was prejudiced.

---

co-defendants Harris and Carter were acquitted of all charges. Brown was sentenced to life imprisonment on Count 2, a concurrent twenty years in prison on Count 4, and a consecutive five years in prison on Count 8; the trial court found that Count 3 merged for the purpose of sentencing. Brown's trial counsel filed a motion for new trial on December 11, 1998, and then a second similar motion for new trial on December 22, 1998. Appellate counsel filed a third motion for new trial on December 29, 1998. Brown, pro se, filed a motion for new trial on January 4, 1999. Appellate counsel filed an amended motion for new trial on August 17, 2001. A new trial was denied on September 15, 2003. A notice of appeal was filed on September 29, 2003, and the case was docketed in this Court on February 19, 2004. The appeal was submitted for decision on April 12, 2004.

*Knight v. State*, 271 Ga. 557, 559 (3) (521 SE2d 819) (1999).[2] Moreover, examination of the record discloses that the trial court took curative action with regard to several of the discovery complaints raised by Brown. A trial court is vested with discretion in formulating remedies for discovery violations, and absent an abuse of that discretion, the trial court's action will stand. *Mullins v. State*, 267 Ga. App. 393, 398 (3) (599 SE2d 340) (2004).

3. Brown next asserts that the trial court did not conduct an in camera review of the State's entire file as it agreed to do. A trial court is required to conduct an in camera inspection of the State's file upon the request of a defendant who is dissatisfied with the State's response to the defendant's request for exculpatory material; but, the trial court's failure or refusal to conduct such an inspection is not a cause for reversal of the defendant's convictions because a post-trial examination of the State's file may be made. *McNeal v. State*, 263 Ga. 397, 398 (4) (435 SE2d 47) (1993). However, a post-trial review is not warranted in this case.

First, at the hearing on the motion for new trial, as amended, the trial court acknowledged that the State's entire file had not been made a part of the record for appeal, but related that the court had conducted an in camera inspection of the detective's files for exculpatory material in response to the request of Brown's trial counsel. Furthermore, even though a trial court is required to make an in camera inspection in response to a proper request, a defendant still " 'bears the burden of showing prejudice to his case resulting from the prosecution's refusal to turn over documents or evidence.' " *Tribble v. State*, 248 Ga. 274, 275 (1) (280 SE2d 352) (1981). Brown fails to even allege any prejudice from the limited in camera inspection.

4. Citing, inter alia, *State v. Vogleson*, 275 Ga. 637 (571 SE2d 752) (2002), and *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982), Brown contends that the trial court erred in refusing to allow him to cross-examine victim Anthony Allen[3] about a letter Allen wrote to another trial judge, which Brown characterizes as a "request for leniency in the witnesses pending cases."[4] The trial court ruled that it was not inclined to allow Brown to explore the letter.[5] There is no basis for reversal on the ground urged as the trial court was correct

---

[2] Brown cites one example of a witness that was allegedly "named on the eve of trial," and argues that his trial counsel "did not have that witness's GCIC to properly impeach until just before cross-examination" and "did not have the time to consider how this recently-disclosed witness would impact [Brown's] defense." However, Brown does not name or identify the witness in question.

[3] Brown's enumeration of error refers to "a witness" without identifying such witness; however, review of the record reveals that the witness in question is Anthony Allen.

[4] The letter was found in the "clerk's file."

[5] The trial court stated that it did not think that the letter "qualifies as *Hines* material."

in its assessment of the letter's content. There is simply no showing of any deal between the victim and the State or any actual or perceived benefit to the victim for his testimony. Compare *State v. Vogleson*, supra; *Hines v. State*, supra.

5. Brown contends that during closing argument, the State improperly commented on his right to remain silent. But the contention is wholly unavailing.

First, Brown fails to cite to the comment at issue in closing argument. The State responds that Brown may be referring to the prosecutor's assertion that "not one witness came in here to dispute anything that the State's witnesses said." However, even if that is the case, it does not aid Brown because he failed to timely object to the comment. *Mullins v. Thompson*, 274 Ga. 366, 367 (2) (553 SE2d 154) (2001); *Butler v. State*, 273 Ga. 380, 384 (8) (541 SE2d 653) (2001). See also *Boyd v. State*, 275 Ga. 237, 238 (3) (564 SE2d 185) (2002). What is more, the prosecutor was commenting on Brown's failure to present evidence, not his right to remain silent. *Jordan v. State*, 239 Ga. 526, 527 (3) (238 SE2d 69) (1977).

6. Brown next contends that during closing argument, the State improperly injected his character into the trial by referring to him as a criminal, a thug, and a drug dealer. But again, Brown fails to cite the subject references in the closing argument. Moreover, Brown failed at trial to timely object to the statements; he waited to object until he moved for a mistrial, after the closing argument had ended. *Boyd v. State*, supra at 238 (3); *Mullins v. Thompson*, supra at 367 (2); *Butler v. State*, supra at 384 (8).

7. Brown maintains that during closing argument the State improperly injected his character into the trial by alleging incorrectly that Brown was charged with possession of a firearm by a convicted felon. But the prosecutor acknowledged the misstatement and the trial court gave curative instructions to the jury.[6] Brown did not object to the curative instructions when they were given or ask that any other action be taken. Instead, he waited until closing argument ended and then moved for a mistrial, urging the prosecutor's misstatement as one basis for the motion. But it was not error for the trial court to refuse to grant a mistrial on such ground.

---

[6] The trial court stated:

The indictments, the counts in the indictments does not include the charge that these defendants are accused of the crime of being a convicted felon and having a firearm in their possession at the time of the commission of a crime . . . to the extent that he made that reference as being one of the counts in the indictment, I do not want you to infer, assume, imagine, suspect in any way that these defendants are convicted felons or that they have been charged with the crime of committing a felony while having a firearm and having a criminal record.

When prejudicial matter is improperly presented to the jury, a mistrial is appropriate if it is essential to preserve the defendant's right to a fair trial. *Scruggs v. State*, 273 Ga. 752, 753 (2) (545 SE2d 888) (2001). It is for the trial court to determine whether the granting of a mistrial is the only corrective measure or whether any prejudice can be corrected by withdrawing the testimony from the jury's consideration under proper instruction from the court. Id. at 754 (2). Here, the trial court's curative instructions adequately preserved Brown's right to a fair trial; therefore, the trial court did not abuse its discretion in denying a mistrial. Id.

8. Brown also complains about the fact that in closing argument, the prosecutor misstated that the doctor said the victim was "shot from the front to the back." First, Brown does not allege or show any specific prejudice from the misstatement. Moreover, the prosecutor acknowledged the mistake and corrected it. Brown did not request any curative instruction or further action from the trial court; therefore, he cannot now object to the trial court's action or lack thereof. *Thomas v. State*, 268 Ga. 135, 136 (3) (485 SE2d 783) (1997).

9. Brown further complains about the prosecutor's comment in closing argument that in assessing the defendant's guilt, the jury could consider the defendant's reactions to the testimony in court. Brown objected, but did not move for a mistrial. The trial court gave curative instructions, and Brown made no further objection. Thus, the issue is waived. *Thomas v. State*, supra at 136 (3). See also *Ford v. State*, 269 Ga. 139, 141 (3) (498 SE2d 58) (1998).

10. The trial court charged the jury regarding inferring the intent to kill from the use of a deadly weapon. Subsequently, this Court held that the giving of such an instruction is error. *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001). However, this Court has repeatedly determined that a prohibited *Harris* charge is harmless when a defendant is acquitted of malice murder and instead convicted of felony murder as in this case. *Ross v. State*, 276 Ga. 747, 748 (2) (583 SE2d 850) (2003); *Spencer v. State*, 275 Ga. 192, 193 (3) (563 SE2d 839) (2002); *Dolensek v. State*, 274 Ga. 678, 681 (558 SE2d 713) (2002); *Oliver v. State*, 274 Ga. 539, 540 (554 SE2d 474) (2001).

Brown acknowledges the state of the law, but nonetheless, urges that the instruction impacted the jury's consideration of felony murder because of the sequencing of the instruction, which followed the felony murder charge as well as the malice murder charge, and because the instruction was repeated in the trial court's recharge to the jury. But as this Court has made plain, in contrast to malice murder, felony murder does not require intent to kill; rather, the defendant must only have intended to commit the underlying felony. *Ross v. State*, supra at 748 (2); *Dolensek v. State*, supra at 681 (5);

*Oliver v. State,* supra at 540 (2). Thus, any inference regarding the intent to kill would have no bearing on the commission of felony murder.

11. Finally, Brown contends that the trial court improperly instructed the jury when it gave the pattern jury charge on assessing the reliability of eyewitness identification testimony,[7] specifically that it was error to tell the jury that it could consider the witness's "level of certainty" as a factor in determining the credibility of the witness's testimony. But the contention is unavailing.

First, Brown himself requested charges regarding the level of certainty of identification of the accused.[8] See *Roulain v. Martin,* 266 Ga. 353, 354 (2) (466 SE2d 837) (1996). What is more, Brown does not set forth any independent argument for his contention of error. Rather, he acknowledges that the Court of Appeals declined to disapprove the charge in *Armstead v. State,* 255 Ga. App. 385 (565 SE2d 579) (2002), but urges that this Court should do so because of arguments set forth in prior cases before this Court, namely, *Jones v. State,* 273 Ga. 213, 218 (3) (b) (539 SE2d 143) (2000); *DeLoach v. State,* 272 Ga. 890, 892 (2) (536 SE2d 153) (2000); and *Johnson v. State,* 272 Ga. 254 (526 SE2d 549) (2000). But these cases are of no aid to Brown. In *Johnson v. State,* the appellant failed to enumerate any error in the giving of the pattern charge. Id. at 260, n. 6. And in *DeLoach v. State,* and *Jones v. State,* the arguments in regard to the pattern charge were not developed because in the former, the appellant waived consideration of the issue on appeal, and in the latter, the issue was not reached.

Assuming that Brown's argument is that the "level of certainty" portion of the pattern charge is infirm because an eyewitness's expression of more certainty in an identification does not equate to greater accuracy of identification, it cannot prevail because Brown has failed to offer any support whatsoever for such an assertion.[9]

*Judgments affirmed. All the Justices concur.*

---

[7] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3rd Edition), Sec. 1.35.10, pp. 27-28.

[8] The following charges, in pertinent part, were requested by Brown:
If you, the Jury, find that the identification of the accused was vague, doubtful, and uncertain, a verdict of not guilty must be given.
The identity of the accused must be proven with that degree of certainty that amounts to proof beyond a reasonable doubt so as to exclude any probability of a mistake having been made.

[9] Again, without any argument, Brown also urges this Court to consider the decision in *United States v. Burrous,* 934 FSupp. 525 (E.D. N.Y. 1996). But as noted in *Armstead v. State,* supra at 387 (2), the *Burrous* decision has, at most, persuasive value. Moreover, the circumstances in *Burrous* are inapposite to the present case.

DECIDED OCTOBER 25, 2004.

*John W. Kraus*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Alvera A. Wheeler, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General,* for appellee.