## A08A1888. FRADENBURG v. THE STATE.
### (676 SE2d 25)

ADAMS, Judge.

Timothy Fradenburg appeals his conviction by jury on one count of felony theft by shoplifting. In his sole enumeration of error, he asserts that the trial court erred in refusing to give a curative instruction to the jury regarding the prosecutor's remarks during closing argument about his race and socioeconomic status.

Viewed in the light most favorable to the verdict, the evidence shows that a loss prevention officer at a DeKalb County Sam's Club retail store saw Fradenburg shoplift a home theater system, the value of which exceeded $300, from the store on March 17, 2004. Specifically, Fradenburg entered the store, went to the electronics department, placed a Bose home theater system valued at $398.72 in a shopping cart, and then purchased the home theater system at the photo department, where he was given a receipt for his purchase. After stopping briefly to look at film, Fradenburg made his way back to the electronics department, where he put the home theater system back on the shelf. Leaving the home theater system on the shelf, Fradenburg next went to the DVD section, where he placed two DVDs in his shopping cart without looking through the DVD selection. Fradenburg then proceeded at a rapid pace through other departments of the store, making seemingly random merchandise selections such as frozen lasagna and tulips, quickly grabbing the items and placing them in his cart. The loss prevention officer noted that Fradenburg appeared to pay no attention to what items he was placing in his cart, a practice that in his experience was atypical of normal shopping. Fradenburg then went to the electronics department for a third time, this time placing a larger Bose home theater system valued at $1,163.62 — over $700 more than the previous

may not establish ineffective assistance of counsel); *Lloyd v. State*, 280 Ga. 187, 192 (2) (d) (ii) (625 SE2d 771) (2006) (same).

system he had purchased and placed back on the shelf — in his shopping cart. Fradenburg meandered throughout the store, making random turns and avoiding faux security camera domes in the ceiling, until he reached the plant section. Fradenburg picked up a potted palm plant and placed it in his cart on top of the more expensive Bose system. Fradenburg's next destination was the pharmacy section, where he selected some over-the-counter medicine and approached the pharmacy cashier to pay for the merchandise he had selected since switching out the Bose systems. Fradenburg flashed his receipt for the less expensive Bose system at the pharmacy cashier and told her he had already paid for the more expensive Bose system in the cart. The cashier did not inspect the receipt, but instead only rang up the remaining items in the cart. After paying for everything in the cart except the Bose system, Fradenburg went to the store's café and purchased a slurpee, which he sat and drank for a few minutes. The loss prevention officer noted that shoplifters frequently engage in the tactic of stopping briefly near the store's exit to see if they are being surveilled before exiting the store. Fradenburg finally walked out of the store's exit doors, carrying with him the more expensive Bose system for which he had not paid.

The loss prevention officer approached Fradenburg outside the store, identified himself, and asked Fradenburg to accompany him to the loss prevention office. Fradenburg complied, and it was confirmed that he had the more expensive Bose system in his possession, but that he only had a receipt for the less expensive one he left in the store. The loss prevention officer, in accordance with company policy regarding shoplifters, refunded Fradenburg all the money he spent at the store that day, and a DeKalb County police officer arrived and took Fradenburg into custody.

During Fradenburg's trial, the prosecutor, in the State's first closing argument, said, "I don't care that [Fradenburg] is a white male in middle class America. It doesn't matter. You don't get a pass for that. You don't, and it doesn't matter that you have money. You don't get a pass for that." The prosecutor also told the jury during closing, "[Fradenburg] just thought he could get away with it, and he thought he was too smart to get caught, and now he thinks he is above the law, and because of the demographic in which he fits in that he should walk free based on this and that he should not be accountable for his actions." Defense counsel did not object to the prosecutor's arguments at the time they were made but instead waited until the conclusion of the State's second closing argument.[1]

---

[1] We note that counsel *did* lodge two contemporaneous objections not relevant to this appeal during the State's second closing argument.

At that time, in a bench conference outside the hearing of the jury, defense counsel said to the court:

> I would request an instruction to the jury that [the State] referred to my client's socioeconomic reality as a reason for the jury to consider the facts in this case, and I think if that is not cause for a mistrial[, it] should at least be a cause for a cautionary instruction, *and I did not object when he was making it.*

(Emphasis supplied.) When the court inquired as to the legal basis for the request for a curative instruction, defense counsel replied, "This is simply a prejudice . . . and I believe that this jury needs to be admonished not to consider what his family background is, where he is from, [or] what his ethnic group [is]."

The court denied the motion for a curative instruction, holding that its preliminary and closing instructions to the jury that opening and closing arguments by counsel are not evidence would remedy any effects of the State's allegedly improper statements. The court then immediately delivered closing instructions to the jury, including the instruction that opening and closing arguments or questions posed by the lawyers did not constitute evidence. The jury returned a guilty verdict.

At the hearing on Fradenburg's amended motion for new trial, at which Fradenburg was represented by new counsel, Fradenburg's trial counsel conceded that he had not made a contemporaneous objection to the State's allegedly objectionable statement. He explained that he had chosen not to object because of his gut instinct not to interrupt a closing argument, out of shock at the statement, because objecting would have been ill-advised and might have sent the wrong message to or angered the jury, and because not objecting to a comment about race was in his client's best interest. The trial court denied the amended motion for new trial.

OCGA § 17-8-75 provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

Here, however, Fradenburg made no contemporaneous objection

during the State's closing argument, and, for the reasons stated below, we find no basis for reversal here. "The time to object to improper closing argument is when the impropriety occurs at trial." *Mullins v. Thompson*, 274 Ga. 366, 367 (2) (553 SE2d 154) (2001). Our Supreme Court has rejected the notion that such a motion can be made *after* the closing argument; rather, the "motion must be made *at the time* the improper argument is uttered." Id. See also *Butler v. State*, 273 Ga. 380, 383-384 (8) (541 SE2d 653) (2001).

> Our Supreme Court has further held that "(w)hen no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial." *Todd v. State*[, 261 Ga. 766, 767 (2) (a) (410 SE2d 725) (1991)].

*Heard v. State*, 291 Ga. App. 550, 555 (3) (662 SE2d 310) (2008).

Assuming, without deciding, that the prosecutor's argument was improper and irrelevant, given the amount of compelling testimony presented against Fradenburg as set forth above, we are unable to say that the prosecutor's comments about his race met this high standard. We further note that Fradenburg interjected his socioeconomic status into the trial by offering testimony about his college and career backgrounds, the "enormous" sums of money he regularly spent at Sam's Club, and the amount of money he had in his checking account on the day of his arrest. Because Fradenburg offered this evidence as part of his defense to the charge, the prosecutor was allowed to inject the matter into his closing argument. *Mathis v. State*, 276 Ga. App. 587 (623 SE2d 674) (2005).

We also note that Fradenburg appears to embed an ineffective assistance of counsel claim in his brief on appeal although he has not enumerated that claim as error. "This court has no jurisdiction to consider grounds which though argued are not enumerated as error according to OCGA § 5-6-40." (Citations and punctuation omitted.) *Dole v. State*, 256 Ga. App. 146, 148 (2) (567 SE2d 756) (2002). Without passing on the nonenumerated error, we note that Fradenburg's trial counsel, as discussed above, indicated that his failure contemporaneously to object was a tactical decision. See generally *Strickland v. Washington*, 466 U. S. 668, 689 (104 SC 2052, 80 LE2d 674) (1984).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 23, 2009.

*William F. Rucker*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.