## A09A1014. WARNER v. THE STATE.
### (681 SE2d 624)

BLACKBURN, Presiding Judge.

Following a jury trial, Ronaldo Warner appeals his conviction of armed robbery[1] and possession of a gun during the commission of a crime.[2] He contends that the trial court erred in denying his motions to suppress, in admitting similar transaction evidence, in excluding his proffered evidence of a bank robbery by another, in refusing to give a curative instruction regarding remarks in the State's closing argument, and in disallowing reputation evidence from a high school football coach. We hold that these enumerations either lack merit or were waived below. Accordingly, we affirm.

Construed in favor of the verdict, *Davis v. State,*[3] the evidence shows that on May 26, 2007, three young males of a minority race covered their faces with bandanas and entered a convenience store. One of the young men, who had dreadlocked hair and wore a distinctive, multi-colored baseball cap that bore the lettering of two words on the front portion, brandished an AK-47 assault rifle while a second young man wearing an Atlanta Braves baseball cap brandished a handgun. In response to their demands for money, the store clerk opened the register, allowing the third young man to empty the machine of its contents into a bag and to take some merchandise. When the robbers fled, the store clerk exited the store and was able to partially identify their escape vehicle by noting the vehicle's dark color and the first three letters (AQN) on its license tag.

In response to a 911 call, police soon arrived to investigate. They learned that the robbery had been recorded on videotape from three different angles, but that the robbers' masks and the quality of the video precluded a clear identification of the perpetrators. One video did record a robber referring to the dreadlocked-hair robber with the

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-11-106 (b) (1).

[3] *Davis v. State,* 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

AK-47 as "Ronaldo."

Three weeks later in a nearby town, two young men of the same minority race entered a convenience store, with one brandishing a handgun. The unarmed young man slugged the store clerk and demanded money, causing the store clerk to strike back. The would-be robbers fled, escaping in a dark-colored vehicle (tag number AQN2793) that was chased by a nearby off-duty policeman in his vehicle. The off-duty officer secured assistance from a uniformed officer in his patrol car, who stopped and arrested the two young men. One of the young men was Warner, who had dreadlocked hair. Warner and his compatriot both confessed to the attempted robbery and told police where the handgun had been thrown from their vehicle, which the police then found. The store clerk identified the young men as the perpetrators. Warner and the compatriot eventually pled guilty to the attempted armed robbery.

An investigating detective, who noted several similarities between the attempted robbery and the earlier videotaped robbery, went with some officers to Warner's residence. There they met Warner's parents, who informed police that Warner was home from college for the summer and slept in a bedroom in their house. Both parents commonly went into the bedroom, to which the door was open, with the mother indicating that she frequently went into the room to straighten up. The parents both gave police consent to search the bedroom, which consent the police and the parents all believed was valid. In searching that room, police found a Red Sox baseball cap that was of the same distinctive coloring and lettering as the cap worn in the videotaped robbery by the young man who bore the AK-47 rifle and who was referred to as "Ronaldo." Under the bed, police found gun clip magazines designed to fit an AK-47 rifle. When asked by police about the gun clips, the parents responded that Warner had some time back purchased a long rifle, which he kept in the trunk of the car he used. The parents asked the police to locate the car, which belonged to the mother.

Police went to the apartment complex where Warner's compatriot lived and found the mother's vehicle in the parking lot. Without searching the vehicle, the police secured the vehicle and had it towed to a secure police lot, pending receipt of a warrant to search the vehicle, which warrant was issued some hours later. The subsequent search of the vehicle yielded an AK-47 rifle in the trunk. Warner later admitted that he drove this car and owned the rifle therein.

Indicted for armed robbery and possessing a firearm during the commission of a crime, Warner, his compatriot, and a third man initially pled not guilty. However, the compatriot later pled guilty to a lesser charge and testified against Warner and the third man at trial. The court denied Warner's motions to suppress the evidence

garnered from the search of his bedroom and of his mother's car, and the jury found Warner guilty on both counts (acquitting the third man). Following the denial of his motion for new trial, Warner appeals.

1. Warner contends that the trial court erred in denying his motion to suppress the evidence found in the warrantless search of his bedroom. Specifically, Warner claims that his parents had no authority to consent to the search of his bedroom in that he was renting the room and they were merely landlords. "Generally, a landlord cannot give valid consent to a search of his or her tenant's quarters." *Looney v. State*.[4] See *Chapman v. United States*.[5] This argument fails for two reasons.

First, if the parents were not Warner's landlords but instead were the heads of the household in which he lived, their consent to the search of his bedroom was valid. *Benjamin v. State*.[6]

> The voluntary consent of the head of a household to the search of premises owned or controlled by such head of the household is sufficient to authorize a search of the premises without a search warrant, and such search does not violate the constitutional prohibition against unreasonable searches and seizures.

(Punctuation omitted.) Id. See *Montgomery v. State*.[7]

Thus, it became a fact question for the trial court to resolve in the motion to suppress hearing as to whether the parents were landlords or heads of household.

> When reviewing a trial court's ruling on a motion to suppress, we apply the "any evidence" standard, which means that we sustain all of the trial court's findings of fact that are supported by any evidence. We construe all evidence presented in favor of the trial court's findings and judgment.

(Punctuation omitted.) *State v. Fisher*.[8] See *Tate v. State*.[9]

Some evidence supported the trial court's tacit finding that the parents were heads of household as opposed to landlords. Warner

---

[4] *Looney v. State*, 293 Ga. App. 639, 642 (667 SE2d 893) (2008).

[5] *Chapman v. United States*, 365 U. S. 610 (81 SC 776, 5 LE2d 828) (1961).

[6] *Benjamin v. State*, 172 Ga. App. 3, 3 (1) (321 SE2d 769) (1984).

[7] *Montgomery v. State*, 155 Ga. App. 423, 424 (1) (270 SE2d 825) (1980).

[8] *State v. Fisher*, 293 Ga. App. 228, 228-229 (666 SE2d 594) (2008).

[9] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

was home for the summer from college and did not pay rent. Beyond the fact that he had no rental agreement with his parents, the court could readily discount his alleged sporadic payment of unspecified amounts as "rent" when he had money. See *Turner v. State*[10] (voluntarily contributing to expenses did not suffice as rent). At most, he performed some household chores like cutting the grass, which chores we have held do not necessarily establish a landlord-tenant relationship. See id.; *Howard v. State*.[11] His parents often went into his bedroom, which was left unlocked. Thus, some evidence supported the trial court's finding that as heads of household, the parents had the authority to consent to a search of their home, including their adult son's bedroom. See *State v. West*.[12]

Second, even if the parents in fact did not have the authority to consent to a search of Warner's bedroom, the circumstances led the police to reasonably believe that the parents had that authority, and therefore the search was valid. See *Illinois v. Rodriguez*.[13] "[A] warrantless search based on unauthorized consent could nonetheless be upheld if the law enforcement officer conducting the search *reasonably* (albeit erroneously) believed the consent given was valid." (Punctuation omitted; emphasis in original.) *Ford v. State*.[14] See *Pike v. State*.[15] Here, "the evidence available to the officers at the time of the search justified one of reasonable caution in the belief that the consenting party [Warner's parents] had authority of the premises." (Punctuation omitted.) *Turner*, supra, 246 Ga. App. at 52 (2). See *Lane v. State*.[16] Because the officers here reasonably believed that they had valid consent to search Warner's bedroom, the trial court (for this second and independent reason) did not err in denying Warner's motion to suppress the evidence found in that bedroom. See *Taylor v. State*.[17]

2. Warner argues that the trial court erred in denying his motion to suppress the items found in the trunk of his car. He complains that the police seized his car without a warrant, which infected the subsequent search of that car performed pursuant to a warrant. We disagree.

After arresting Warner in a nearby county for attempted robbery, police conducted a consensual search of Warner's bedroom and

---

[10] *Turner v. State*, 246 Ga. App. 49, 51-52 (2) (539 SE2d 553) (2000).

[11] *Howard v. State*, 207 Ga. App. 125, 126 (1) (427 SE2d 96) (1993).

[12] *State v. West*, 237 Ga. App. 185, 186-187 (514 SE2d 257) (1999).

[13] *Illinois v. Rodriguez*, 497 U. S. 177, 186 (III) (B) (110 SC 2793, 111 LE2d 148) (1990).

[14] *Ford v. State*, 214 Ga. App. 284, 286-287 (3) (447 SE2d 334) (1994).

[15] *Pike v. State*, 265 Ga. App. 575, 577 (1) (594 SE2d 753) (2004).

[16] *Lane v. State*, 250 Ga. App. 160, 162-163 (1) (549 SE2d 468) (2001).

[17] *Taylor v. State*, 228 Ga. App. 325, 328 (1) (c) (491 SE2d 417) (1997).

found gun clip magazines that would fit an AK-47 rifle similar to that used in the earlier videotaped robbery. They learned from Warner's parents that he kept such a rifle in the trunk of his mother's car, which car she allowed him to use and which car she requested police to find. Once police located that car in the parking lot of the apartment complex where his compatriot lived, police seized that vehicle and had it towed to a secure police lot. After obtaining a search warrant some hours later, police searched the vehicle and found the rifle wrapped in a towel in the trunk.

For two reasons, we agree with the trial court that the items from the trunk were admissible. First, whether the warrantless seizure of the car was illegal or not, the seizure itself resulted in the discovery of no items in the trunk, for the vehicle was not searched at that time. Rather, the items were discovered during a later search performed pursuant to a search warrant. Accordingly, the purportedly illegal seizure resulted in no items to be suppressed nor in any items admitted at trial, justifying the court's denial of the motion to suppress on this ground alone. Cf. *Huff v. State*[18] (where no items from illegal search were admitted at trial, any error in denying motion to suppress was harmless). *State v. Lejeune*[19] and *Coolidge v. New Hampshire*,[20] cited by Warner, are distinguishable in that no valid search warrant preceded the vehicle searches resulting in the items found in those cases.

Second, even if the seizure resulted in the discovery of the items admitted at trial, the seizure was not illegal in that evidence supported the trial court's implicit finding that exigent circumstances justified the warrantless seizure. The vehicle, registered to Warner's mother, was parked in an unprotected parking lot of the compatriot's apartment complex in the wee hours of the morning. Warner and his compatriot had just been arrested for the attempted robbery, but the third man involved in the earlier armed robbery had not. The parents of Warner had told the police that Warner kept a long rifle in the trunk of the vehicle. Concerned that, in light of Warner's arrest, this third man might now seek out the vehicle to destroy the evidence contained therein, police sought to secure the vehicle by having it towed to a secure police parking lot until they could obtain a search warrant some hours later. Similar circumstances have been found sufficiently exigent to allow a warrantless seizure of a vehicle. See *United States v. Alexander*;[21] *Wright v.*

---

[18] *Huff v. State*, 258 Ga. 108, 110 (2) (c) (365 SE2d 430) (1988).

[19] *State v. Lejeune*, 276 Ga. 179, 182 (2) (576 SE2d 888) (2003).

[20] *Coolidge v. New Hampshire*, 403 U. S. 443, 457 (II) (A) (91 SC 2022, 29 LE2d 564) (1971).

[21] *United States v. Alexander*, 835 F2d 1406, 1410 (II) (11th Cir. 1988).

*State.*[22]

As evidence supported its ruling, we discern no error in the trial court's denial of the motion to suppress the items found in the trunk of Warner's car.

3. Warner complains that the trial court erred in sustaining objections to his cross-examination questions of a police officer that focused on that officer's knowledge of an armed robbery of a nearby bank that occurred around the same time as the armed robbery at issue. This bank robbery involved two armed men of the same minority race who wore scarves during the robbery. We discern no abuse of discretion in the court's ruling.

"[T]he scope of cross-examination is within the sound discretion of the trial court and will not cause reversal unless the discretion is abused." *Chastain v. State.*[23] Although a defendant may introduce evidence tending to show that another person committed the crime for which defendant is being tried, "the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature." *Klinect v. State.*[24] Evidence that some unidentified person or persons may have committed other similar crimes does not meet these requirements. *Hamilton v. State.*[25] See *Carr v. State*[26] (as no evidence showed the identity of the perpetrator of the similar crimes, court did not abuse its discretion in excluding this evidence).

Because Warner proffered no evidence as to the identity of the perpetrators of the bank armed robbery (indeed, nothing even showed it was *not* Warner), the trial court did not abuse its discretion in excluding the evidence. See *Hamilton*, supra, 274 Ga. at 584 (3).

4. Warner complains that the trial court erred in allowing the State to introduce as a similar transaction the evidence of the attempted robbery, to which Warner confessed and pled guilty. Warner claims that this attempted robbery three weeks later was insufficiently similar to justify its admission as a similar transaction. However, Warner did not preserve this issue for appeal. "[A]lthough [Warner] opposed the admission of the similar transaction evidence during a pretrial hearing, he did not raise any objection at trial when testimony regarding the similar transaction was admitted. [Warner,] therefore, waived any objection to this evidence." *Garvin v. State.*[27]

---

[22] *Wright v. State*, 276 Ga. 454, 460-462 (5) (579 SE2d 214) (2003).

[23] *Chastain v. State*, 257 Ga. 54, 55 (354 SE2d 421) (1987).

[24] *Klinect v. State*, 269 Ga. 570, 573 (3) (501 SE2d 810) (1998).

[25] *Hamilton v. State*, 274 Ga. 582, 583-584 (3) (555 SE2d 701) (2001).

[26] *Carr v. State*, 279 Ga. 271, 272-273 (2) (612 SE2d 292) (2005).

[27] *Garvin v. State*, 292 Ga. App. 813, 814 (665 SE2d 908) (2008).

"[T]he rule requiring a trial objection on similar transaction evidence is firm in Georgia jurisprudence, and we are bound to follow it." *McClarity v. State*.[28] "The matter was not preserved for appeal." *Garvin*, supra, 292 Ga. App. at 814.

5. Warner contends that the court erred in denying his request for a curative instruction or admonishment to combat the adverse effect of improper remarks made during the State's closing argument. Specifically, the prosecutor for the State argued that defense counsel's "only allegiance is to his client and the only thing that's in this case was money in order to come up here and spend as much smoke and as enough distraction from the evidence in the case." After closing arguments and the charge to the jury, and after the jury had retired, Warner moved the court to admonish the prosecutor in front of the jury for this improper remark, which motion the court denied. We hold that this issue was waived.

We agree that the remark was improper argument. See *Griffin v. State*.[29] However, Warner made no contemporaneous objection or motion. Rather, he waited until after closing arguments were concluded, until after the court had charged the jury, and until after the jury had retired to deliberate, before making any objection, and even then, he merely moved the court for a curative instruction in which the court would admonish the prosecutor in front of the jury. Our Supreme Court has been painfully clear that "such a motion must be made *at the time* the improper argument is uttered," and that raising such after closing argument is too late. (Emphasis in original.) *Mullins v. Thompson*.[30] See *Butler v. State*.[31] Since these two cases, this Court and the Supreme Court have consistently held that such motions or objections, when made after the offending closing argument has concluded (and particularly when made after the court's subsequent jury charge and after the jury has retired) are untimely and are therefore waived. See *Moxley v. Moxley*;[32] *Brown v. State*;[33] *Boyd v. State*;[34] *Brannan v. State*;[35] *Fradenburg v. State*;[36] *Hernandez v. State*.[37]

6. Warner urges that the trial court erred in striking from the

---

[28] *McClarity v. State*, 234 Ga. App. 348, 350 (2) (506 SE2d 392) (1998).

[29] *Griffin v. State*, 291 Ga. App. 657, 660 (2) (a) (662 SE2d 767) (2008).

[30] *Mullins v. Thompson*, 274 Ga. 366, 367 (2) (553 SE2d 154) (2001).

[31] *Butler v. State*, 273 Ga. 380, 384 (8) (541 SE2d 653) (2001).

[32] *Moxley v. Moxley*, 281 Ga. 326, 328 (6) (638 SE2d 284) (2006).

[33] *Brown v. State*, 278 Ga. 544, 547 (6) (604 SE2d 503) (2004).

[34] *Boyd v. State*, 275 Ga. 237, 238 (3) (564 SE2d 185) (2002).

[35] *Brannan v. State*, 275 Ga. 70, 82-83 (17) (561 SE2d 414) (2002).

[36] *Fradenburg v. State*, 296 Ga. App. 860, 862 (676 SE2d 25) (2009).

[37] *Hernandez v. State*, 291 Ga. App. 562, 564 (1) (662 SE2d 325) (2008).

record a character witness's testimony, who testified as to Warner's good reputation in the school community. When the witness (a high school football coach) equivocated as to the extent of his familiarity with Warner, the court asked him directly whether he was familiar with Warner's reputation in the community in which Warner lived, to which the witness responded, "I'm not." Thereupon, the State asked the court to strike the witness's testimony, which the court granted by instructing the jury to disregard the testimony.

The trial court did not abuse its discretion. "The direct examination to prove the character of the accused must be limited to questions concerning his general reputation in the community *in which he lives.*" (Emphasis supplied.) *Overby v. State.*[38] Reputation in the business community or in the school community is not the correct test. See *Haralson v. State;*[39] *Clark v. State.*[40] Because the witness expressly denied having knowledge of Warner's reputation in the community in which Warner lived, the trial court did not abuse its discretion in striking the testimony.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED JUNE 12, 2009 —
RECONSIDERATION DENIED JULY 14, 2009 

*Joseph S. Key,* for appellant.
*Peter J. Skandalakis, District Attorney, Kevin T. McMurry, Assistant District Attorney,* for appellee.

---

[38] *Overby v. State,* 125 Ga. App. 759, 760 (3) (188 SE2d 910) (1972).
[39] *Haralson v. State,* 223 Ga. App. 787, 792 (5) (479 SE2d 115) (1996).
[40] *Clark v. State,* 225 Ga. App. 851, 851-852 (1) (485 SE2d 543) (1997).
[1] *Ward v. State,* 242 Ga. App. 246 (529 SE2d 378) (2000).