**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 12, 2015**

# In the Court of Appeals of Georgia

A14A1876. THE STATE v. NEW.

RAY, Judge.

The State appeals from the grant of a motion to suppress filed by Kevin Charles New after he was indicted for his alleged possession of methamphetamine with intent to distribute, possession of methamphetamine, and possession of marijuana, all pursuant to OCGA § 16-13-30; theft by receiving, in violation of OCGA § 16-8-7; and possession of a drug-related object under OCGA § 16-13-32.2. The State contends that the trial court erred in granting the motion because law enforcement acted reasonably under the totality of the circumstances and OCGA § 17-5-30 only requires suppression of evidence seized during an unlawful search; law enforcement acted in good faith; and the purposes of the exclusionary rule are not served in this

case by suppressing the evidence. For the reasons that follow, we are constrained to affirm.

> [T]hree fundamental principles . . . must be followed when conducting appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and [her] findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

 (Citations and punctuation omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013). To the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts." (Citation omitted.) *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012).

The undisputed evidence adduced at the motion to suppress hearing shows that on or about November 15, 2012, law enforcement officers with Hall County's Multi-

2

Agency Narcotics Squad ("MANS Unit") learned from a Gwinnett County police officer that New possessed or was selling drugs. An officer with the MANS Unit at the time of the search testified that he did not know the source of the Gwinnett officer's information, and that he could not have gotten a search warrant because "[w]e didn't have any probable cause" and because "[t]here was no . . . evidence to back up that [New] was actually selling" drugs.

Prior to initiating the search, Agent Casey Ivey, who was working with the MANS Unit, contacted the Gainesville Probation Office to verify New's probation status. He was given a copy of New's sentence, which included a waiver of New's Fourth Amendment rights against search and seizure. Officers then went to New's address. He walked out from the area near his detached garage to meet them, but when the officers told him they were there to search him pursuant to his Fourth Amendment waiver, New told them his probation had been terminated early. Agent Ivey showed New the copy of his sentence, which said he had waived his Fourth Amendment rights through the remainder of his probation. According to those documents, his probation was not scheduled to end for another three years. New told officers at least three times that he was no longer on probation, so prior to initiating any search, two other officers each separately verified New's probation status. One

3

officer called Hall County Dispatch, which checked both the National Crime Information Center ("NCIC") and the Georgia Crime Information Center ("GCIC") databases and confirmed that New was on probation; the other officer contacted a representative from the probation office, who also confirmed that New was on probation and had a valid Fourth Amendment waiver.

The agents, without seeking or obtaining New's consent, then searched his person, the curtilage of his home, and a detached garage and the apartment above it. They found a glass smoking device containing methamphetamine residue in New's left front pocket. When agents retraced the path New walked from his garage to meet them, they discovered a butane lighter and a "hide-away can," labeled as an energy drink, that contained methamphetamine and marijuana. Agents also found in an apartment above the garage a large sum of money and a GPS device that checked out as stolen.

However, New's probation for the drug offenses to which he had pled guilty had indeed been terminated early and his Fourth Amendment waiver was no longer valid. Nicole Johnson, a Hall County probation officer, had completed and submitted New's early termination papers, and on March 14, 2012 – eight months prior to the search in question – a judge issued an order approving the early termination of New's

4

probation without a court adjudication of guilt pursuant to the Probation for First Offenders Act, OCGA § 42-8-60, et seq.

After the search, New moved to suppress the evidence, and the trial court granted his motion. The State appeals.

1. The State first contends that the trial court erred in granting the motion to suppress because law enforcement acted reasonably under the "totality of the circumstances;" thus, it argues that the search was lawful and that OCGA § 17-5-30 requires suppression only during an unlawful search.

OCGA § 17-5-30 (a) provides, in pertinent part, that: "[a] defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress as evidence anything so obtained on the grounds that: (1) ...[t]he search and seizure without a warrant was illegal[.]"

It is undisputed that New was not on probation and that there was not a valid waiver of his Fourth Amendment rights at the time of the search. Thus, in the context of this enumeration, we must examine whether the warrantless searches of New's property and of New himself, in his capacity as a former probationer with full Fourth Amendment rights, were reasonable and lawful.

5

"Ordinarily, a search by a police officer must be supported by a search warrant, consent, or exigent circumstances." (Citation omitted.) *Prince v. State*, 299 Ga. App. 164, 170 (3) (b), n. 7 (682 SE2d 180) (2009).[1] "It is well established that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." (Citations and punctuation omitted.) *Davis v. State*, 262 Ga. 578, 580 (1) (422 SE2d 546) (1992).

The State concedes that officers neither sought nor received New's consent to search, and that there was no probable cause to justify a search warrant. The State does not argue that any exigent circumstances existed to justify the searches. See *Brown v. State*, __ Ga. App. __, *2 (1) (767 SE2d 299) (Case No. A14A2284, decided December 16, 2014) (exigencies could include preventing imminent destruction of evidence, pursuing a fleeing suspect, or helping people who are injured or threatened with imminent injury). Also, New was not searched incident to a lawful arrest. See OCGA § 17-5-1. See generally *Lindsey v. State*, 282 Ga. App. 644, 649 (639 SE2d

---

[1] In its reply brief, the State contends that officers had a "good-faith suspicion for the search based upon information from a law enforcement officer in Gwinnett County that [New] was in possession [of] and distributing drugs." However, this standard applies to probationers in certain contexts, and New was not on probation at the time of the search. See *Prince*, supra at 169-170 (3) (b), n. 7.

584) (2006) (where no probable cause existed to believe defendant had committed a crime and where officer lacked any reason to believe a search was necessary for safety, a full search of defendant's person was an unreasonable intrusion).

Given that New was not a probationer and had not waived his Fourth Amendment rights, the searches and seizures were not valid.

2. The State next argues that the trial court erred in granting the motion to suppress because law enforcement officers acted in good faith when conducting the searches given their reasonable belief that New was on probation and subject to a Fourth Amendment waiver of rights; thus, it contends, the search was reasonable and legal.

However, our Supreme Court has found that Georgia recognizes no good faith exception to the exclusionary rule. In *Gary v. State*, 262 Ga. 573, 575 (422 SE2d 426) (1992), our Supreme Court held that the good faith exception to the exclusionary rule of *United States v. Leon*, 468 U. S. 897 (104 S.Ct. 3405, 82 LE2d 677) (1984), does not apply in Georgia. *Gary* involved the seizure of tangible evidence pursuant to a search warrant that was later found to lack probable cause. *Gary*, supra at 573-574, 577. The *Gary* court reasoned that the *Leon* good-faith exception stemmed from the federal judiciary's modification of a judicially-created exclusionary rule, but because

Georgia's legislature had codified a specific exclusionary rule in OCGA § 17–5–30, "infusion of the *Leon* good-faith exception into the statute would be tantamount to judicial legislation." (Footnote omitted.) *Gary*, supra at 575.

The State argues that the Supreme Court's later ruling in *Harvey v. State*, 266 Ga. 671 (469 SE2d 176) (1996), opens the door to a different result. *Harvey* involved a search incident to arrest where the officer reasonably believed he was exercising a valid arrest warrant when, in fact, the warrant had been recalled. Id. at 671-672. The *Harvey* court reasoned that because, at the moment the arrest was made, the officer "knew" there was a valid warrant, probable cause existed to support the arrest because "probable cause must be measured by current knowledge, i.e., at the moment the arrest was made and not hindsight." (Citations and punctuation omitted.) Id. at 672-673.[2] Having found that the arrest was supported by probable cause, the *Harvey* court determined that Harvey's motion to suppress had been correctly denied. Most significantly for our purposes, the court found that "the applicability of the *Leon* 'good faith' exception *is not implicated* by this case." (Emphasis supplied.) Id. at 674.

---

[2] We note that the rationale the *Harvey* 4 - 3 majority employed in order to find probable cause engendered vehement dissents. See id. at 674-678.

8

In the instant matter, however, no intermediary action exists – unlike the arrest in *Harvey* – that can be deemed valid or supported by probable cause thanks to officers' reasonable belief, and which could be used to sidestep the direct application of the good faith exception to the search and seizure. The only possible justification for the search and seizure involving New is the officers' good-faith belief that he was on probation and subject to a valid Fourth Amendment waiver, and that option is foreclosed by *Gary*.[3]

We find two more recent Georgia Supreme Court cases more closely aligned with the instant action in that they, too, lack an intermediate event such as an arrest that was ultimately found to be supported by probable cause and which could be used as a springboard to justify a later search and seizure. In *Harper v. State*, 283 Ga. 102, 106-107 (2) (657 SE2d 213) (2008), where an officer relied on a warrant that later was found to be unsupported by probable cause and a valid warrant was required to search the defendant's desk, the evidence seized from the desk had to be suppressed

---

[3] We are not unsympathetic to the State's assertion that the facts herein are of sufficient similarity to those in *Harvey* such that it would be logical to extend the ruling in *Harvey* in this context. However, given the pronouncement in *Gary* against judicial creation of a good faith exception to the statutory exclusionary rule in Georgia and our Supreme Court's apparent conflict in *Harvey*, we think any extension of the holding in *Harvey* is best left to our Supreme Court itself.

because Georgia has no good faith exception to the exclusionary rule. Accord *Beck v. State*, 283 Ga. 352, 352-353 (1) (658 SE2d 577) (2008) (where officers relied on a search warrant issued by a person who lacked authority to do so, the warrant was invalid, the Court of Appeals erred in upholding its validity, and the trial court erred in denying the motion to suppress because Georgia recognizes no good faith exception to the exclusionary rule).

More directly on point in the context of warrantless searches is *State v. Gallup*, 236 Ga. App. 321 (512 SE2d 66) (1999), where, after more than 80 storage units were vandalized in a single night, police initially searched the units without a warrant. Id. at 321. However, during that search, one officer opened a refrigerator and saw what appeared to be marijuana. Another officer then obtained a search warrant and seized the marijuana. Id. at 322. Citing *Gary*, we affirmed the trial court's grant of defendant's motion to suppress, reasoning that the officer exceeded the lawful scope of his investigation of the burglary and vandalism. Id. at 324 (1) (c). We also found that no exigent circumstances existed to justify the warrantless opening of the refrigerator and that "[t]here is in Georgia no 'good faith' exception to our statutory exclusionary rule, OCGA § 17-5-30." Id. at 324 (2).

10

The State also cites to several cases involving warrantless searches where a person other than the defendant consents to the search, arguing that an officer's reasonable belief that an unauthorized person may consent renders the search valid. However, both cases cited by the State, *Warner v. State*, 299 Ga. App. 56, 59 (1) (681 SE2d 624) (2009) (parents consenting to search of adult son's bedroom in their house) and *Ford v. State*, 214 Ga. App. 284, 285 (1) (447 SE2d 334) (1994) (adult sister consenting to search of her adult brother's bedroom in her apartment), involved situations in which the appellate court ultimately determined that there was some evidence supporting the lower court's factual finding that the person giving consent had authority to do so. Those appellate courts were bound by the standard of review: "[w]hen reviewing a trial court's ruling on a motion to suppress, we apply the 'any evidence' standard, which means that we sustain all of the trial court's findings of fact that are supported by any evidence." (Citations and punctuation omitted.) *Warner*, supra at 58 (1). We, too, are bound by that standard. In the instant case, there is no evidence that New was actually on probation or had a valid Fourth Amendment waiver in place at the time of the search and seizure.

Citing *Ford*, supra at 286-287 (3),[4] the *Warner* court posits in conditional language, that "[a] warrantless search based on unauthorized consent *could* nonetheless be upheld if the law enforcement officer conducting the search *reasonably* (albeit erroneously) believed the consent given was valid." (Footnote omitted, emphasis supplied, and emphasis in original). *Warner*, supra at 59 (1). However, this proposition arguably is dicta in both *Ford* and *Warner* as the issue was squarely before neither court. We cannot base a decision on dicta in the face of *Gary*'s mandate. See *Walker v. State*, 290 Ga. 696, 700 (2) (723 SE2d 894) (2012) (where obiter dicta was cited in cases that "either failed to mention or failed to analyze the relevant language" of a statute, the dicta was not binding on the court in a later case where the issue actually was presented for decision).

---

[4] *Ford*, supra at 287 (3), also cites *Davis*, supra. *Davis* was issued just days after the *Gary* decision declaring that Georgia recognizes no good faith exception to the exclusionary rule. *Davis* involved a 10-year-old child who consented to a search of his parents' home. Id. at 578. The *Davis* decision was limited by its own terms to a single issue: "whether, under the particular facts of this case, the consent to search given by the child in this case was valid[,]" and the *Davis* court determined that it was not. Id. at 579, 581 (1). *Davis* cites *Gary* in a footnote without comment or context, but this issue was not squarely before the *Davis* court, and it rendered no decision on the interplay of the good-faith exclusion with the evidence gleaned from the illegal search. See id. at 580 (1), n. (1) and 583 (4). See also *Ford*, supra at 289 (3) (Blackburn, J., dissenting).

3. Finally, the State argues that because the primary purpose of the exclusionary rule is to deter police misconduct, its purposes would not be served in the instant case where the officers in the field acted in good faith and the trial court erred in suppressing the evidence.

This argument has some merit, although like many issues, there are two sides to the story and competing interests are at play.

Indeed, "[t]he primary reason for the exclusionary rule is to deter police misconduct, whether it be negligent or intentional." *State v. Stringer*, 258 Ga. 605, 606 (372 SE2d 426) (1988). As the State contends, where police have acted in good faith, there would be no deterrent effect. However, as New points out, there may have been some negligence by officers checking and updating his probationary file. The record shows that a judge had terminated New's probation *eight months* prior to the search in question; however, his probation records were not fully updated to show his status until seven months *after* the search at issue. If this is the result of negligence, logically, excluding the evidence at issue here could have the requisite deterrent effect on police misconduct.

Regardless, our decision herein is not dictated by policy, but by OCGA § 17-5-30 and by *Gary*. Georgia recognizes no good faith exception. However, our

legislature might wish to consider the rationale in *Leon*. There, the United States Supreme Court found that a judicially created exception to the exclusionary rule was permitted given that the Fourth Amendment has no provision "expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure works no new Fourth Amendment wrong." (Citation and punctuation omitted.) *Leon*, supra at 906 (II) (A). Further, the *Leon* court recognized that if too strictly applied, the exclusionary rule exacts certain social costs, including an interference with the functions of judges and juries.

> An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. Indiscriminate application of the exclusionary rule, therefore, may well generate disrespect for the law and administration of justice.

Id. at 907-908 (II) (A).

From a philosophical standpoint, this rationale is valid. The fact that it is not accepted in Georgia, because (as outlined in *Gary)* we have a legislatively created exclusionary rule rather than a judicially created exclusionary rule, makes it no less valid. Without a good faith exception in this context, we essentially demand perfection from police, yet do not require it of prosecutors, defense counsel, or even judges.

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur in the judgment only*.