## A06A2188. SHULER v. THE STATE.
(639 SE2d 623)

BLACKBURN, Presiding Judge.

Following a jury trial, Elizabeth Ann Shuler was convicted of violating the Georgia Controlled Substances Act[1] by possessing methamphetamine. On appeal, she contends that the trial court erred by denying her motion to suppress evidence that police found during a search of her hotel room. For the reasons that follow, we affirm.

Construed in favor of the verdict, *Short v. State*,[2] the evidence shows that, in August 2005, while investigating a stolen truck report, police went to a hotel (where the victim had already found his truck) to look for Shuler, who the victim believed had stolen the truck. After obtaining Shuler's room number from the hotel clerk, police knocked on her door, and she answered. The officer asked her if she knew anything about the victim's truck, and Shuler responded that she had taken it, but claimed that she had permission to do so. The officers handcuffed Shuler and took her down to a squad car in the hotel parking lot, as Shuler's boyfriend, who was also staying in the room, walked down with them. In the parking lot, upon request by the victim, the officers asked Shuler if she had the keys to the truck, and she responded that she did, but they were in the room. The officers sent the boyfriend back up to the room to retrieve the keys, but he was unable to find them.

A third officer, Officer Sisson, then arrived at the scene, and Shuler, who was acquainted with him, gave Officer Sisson permission to go up to the hotel room and look for the truck keys, which he did, joined by another officer and Shuler's boyfriend. During his search for the keys, Officer Sisson found a set of digital scales and what was later determined to be methamphetamine.

Shuler was charged with one count of possession of a controlled substance with intent to distribute,[3] possession of a controlled substance,[4] and theft by taking.[5] Before trial, she moved to suppress the evidence found in her hotel room, which motion the trial court denied. After a trial, a jury found Shuler guilty of possession of a controlled substance, acquitting her of the remaining charges. She now appeals.

On appeal, Shuler concedes that she voluntarily gave consent to search for the truck keys, but she contends that the evidence should have been suppressed because police found the evidence only after exceeding the scope of her consent. We disagree.

---

[1] OCGA § 16-13-30.

[2] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[3] OCGA § 16-13-30 (b).

[4] OCGA § 16-13-30 (a).

[5] OCGA § 16-8-2.

An appellate court reviewing a trial court's order on a motion to suppress evidence must accept the trial court's decisions with regard to questions of fact and credibility unless they are clearly erroneous. The reviewing court must also construe the evidence most favorable to the upholding of the trial court's findings and judgment and must not disturb the findings of the trial judge unless no evidence exists to support them.

(Citation omitted.) *Parker v. State.*[6]

When the consent of the person to be searched is the authority for the action, the scope of the consent must be measured by all of the circumstances and not only what a person says in response to a request. The type, duration, and physical zone of intrusion is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect? "

*Springsteen v. State.*[7]

Viewing the controverted evidence in favor of the court's ruling, the evidence at the suppression hearing showed that, outside the hotel, Officer Sisson asked Shuler if he could go to the room to look for the truck keys, and she replied, "Yes . . . you can go find them," and did not indicate where the keys might be. Officer Sisson was accompanied by Shuler's boyfriend, who was also staying in the room, and another officer. Officer Sisson asked Shuler's boyfriend where the keys might be, and the boyfriend replied that he did not know and also gave Officer Sisson permission to search for the keys.[8]

Upon searching a purse in the room, Officer Sisson found some digital scales and a set of keys, and asked the boyfriend whether that set was the set to the truck. Officer Sisson testified that the boyfriend replied that he did not know if they were the correct keys, so Officer Sisson kept looking to make sure there were no other keys in the

---

[6] *Parker v. State*, 233 Ga. App. 616, 617 (504 SE2d 774) (1998).

[7] *Springsteen v. State*, 206 Ga. App. 150, 152 (424 SE2d 832) (1992).

[8] Though not objected to, we note that the evidence was not inadmissible hearsay, as it was used to explain an investigating officer's conduct relevant to the case, and not as original evidence of the defendant's guilt. See, e.g., *Mincey v. State*, 251 Ga. 255, 266 (12) (304 SE2d 882) (1983).

room. Upon looking under a chair, Officer Sisson found a bag, which contained a suspicious substance that was later confirmed to be methamphetamine.

We note at the outset that Shuler's boyfriend, who was lying on the bed in the hotel room when police knocked on the door at approximately 7:30 a.m., had authority to consent to the search of the room in Shuler's absence. See *Georgia v. Randolph*;[9] *United States v. Matlock*[10] (authority to consent to a search rests on "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right"). Therefore, the scope of Shuler's initial consent is not dispositive.[11] We emphasize that there was no evidence or allegation that the police removed Shuler from her room as a way to avoid her objecting to the search. Indeed, police first avoided searching at all by sending her boyfriend into the hotel room alone to find the keys, and later sought and obtained consent from both Shuler and her boyfriend to search for the keys. Therefore, we examine the scope of the consent given by Shuler's boyfriend, who shared Shuler's hotel room and who was present during the search.

When the officer asked the boyfriend (who had already consented to the search) whether the keys the officer found were the correct keys, he told the officer that he did not know. Based on this response, the officer testified that he continued searching to ensure that he had the correct keys. In light of the inconclusive response by Shuler's boyfriend, and in light of the fact that the officer was looking for a particular set of keys, the officer could reasonably conclude that the boyfriend's consent to search continued past the point at which the officer first found *some* keys. See *Bohannon v. State*[12] (" '[o]nce consent is legally obtained, it continues until it is either revoked or withdrawn' ").

In so holding, we emphasize that police were looking for a common, noncontraband object (a set of keys), more than one of which may normally be found in a room occupied by more than one person, as this room was. The officer initially attempted to limit his search by asking Shuler's boyfriend if the officer had found the correct keys, and

---

[9] *Georgia v. Randolph*, 547 U. S. 103 (II) (126 SC 1515, 164 LE2d 208) (2006).

[10] *United States v. Matlock*, 415 U. S. 164, 172 (II) (94 SC 988, 39 LE2d 242) (1974).

[11] We note that nothing in her express consent attempted to limit the boyfriend's ability to consent to a broader search. Therefore, we are not faced with the question of whether an objection on her part would have effect under *Georgia v. Randolph*. See *United States v. Matlock*, supra, 415 U. S. 164 (where police obtained consent from a resident in the dwelling's doorway, in lieu of asking defendant who was arrested in his front yard).

[12] *Bohannon v. State*, 251 Ga. App. 771, 773 (2) (555 SE2d 112) (2001).

was provided with an inconclusive answer. Measuring the scope of the boyfriend's consent by all the circumstances in this case, see *Springsteen v. State*, supra, 206 Ga. App. at 152, including the particular object being searched for, its small size, and the exchange between the officer and the boyfriend who was present at the search, it was not unreasonable to continue the search, in the absence of any objection, to determine if the correct keys were found. The officer did not, for example, look in unusual places, such as between mattresses or behind ceiling tiles. The contested evidence was found in places where missing keys might well be found — first in a purse (where the digital scales were found) and later under a chair (where the methamphetamine was found). Therefore, in light of the particular facts present in this case, we affirm.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED DECEMBER 4, 2006.

*Teddy L. Henley*, for appellant.

*Leigh E. Patterson, District Attorney, Natalee L. Staats, Assistant District Attorney*, for appellee.