## A10A0319. BURKE v. THE STATE.
### (691 SE2d 314)

JOHNSON, Presiding Judge.

A jury found Geronimo Burke guilty of three counts of armed robbery in connection with a series of convenience store robberies. Burke appeals from the convictions, contending the trial court erred in denying his motion to suppress a gun and clothing recovered during a warrantless search of his home. Burke urges that his objection to the search, like that of the defendant in *Georgia v. Randolph*,[1] overrode the consent given by his wife. Based on the facts presented in this case, we find no error and affirm the ruling of the trial court.

In considering an appeal from the denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts.[2] Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.[3]

So viewed, the evidence shows that law enforcement officers received information that a car registered to Maurice Darien was

---

[*] See, e.g., *Stevens v. Green*, 204 Ga. App. 60 (418 SE2d 377) (1992).
[1] 547 U. S. 103 (126 SC 1515, 164 LE2d 208) (2006).
[2] *Serrano v. State*, 291 Ga. App. 500, 501 (662 SE2d 280) (2008).
[3] Id.

involved in the armed robberies, and that it was occupied by three or four men. A corporal with the Metter Police Department knew that Darien had been staying in a certain neighborhood, so he drove to that area. The corporal saw the car parked behind Burke's mobile home, and called for assistance.

Several other officers arrived on the scene. The officers surrounded the home, as they "weren't exactly sure what we had." The corporal heard people "stomping and running" inside the trailer. He knocked on the door. Burke's wife answered and stated that it was her home. The officer asked if anyone was with her. She said "no," but then a man stood up from a sofa and approached the door. Officers took that man outside and detained him temporarily. The corporal asked Burke's wife if police could come inside to see who else was there. She replied that they could. The corporal and another Metter police officer then entered the residence, identified themselves, and ordered any occupants to come out with their hands up. Burke and Darien emerged from behind a blanket or curtain that blocked the hallway. The men were taken outside and detained.

As officers were detaining the men outside, more officers arrived and went inside the home. An investigator with the Candler County Sheriff's Department asked Burke's wife if she would consent to a search of the residence in connection with a robbery that had just occurred. She consented to the search verbally and in writing. The investigator knew that Burke also lived in the home, and he had "contact" with Burke, who was outside. He did not ask Burke for permission to search the home, and Burke never told him not to search the residence.

An investigator with the Bulloch County Sheriff's Office testified that he was present when Burke's wife consented to the search, and that he did not hear Burke say anything regarding the search.

Burke testified that he asked the officer who escorted him outside and placed him in a Metter Police Department patrol car why he was being arrested, and that the officer asked Burke if he would consent to a search of the house. Burke testified that he replied, "no."

An officer with the Metter Police Department testified that he took two of the men out of the home and placed them in a patrol car, that he could not recall if one of the men was Burke, and that one of the men asked him why he was being arrested. The officer stated that no other communication took place between himself and the two men he took into custody. The Metter officer who went inside with the corporal to look for occupants testified that he believed that this Metter police officer was the officer who took Burke out of the trailer.

In *Georgia v. Randolph*, the United States Supreme Court held that

> a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.[4]

In other words, one co-tenant's desire to consent cannot prevail over a present co-tenant's stated objection to a search.[5] In this case, the trial court expressly found that, despite his testimony to the contrary, Burke did not object to the search. "The credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony."[6]

Burke's argument that *Randolph* requires a different result is unpersuasive. In *Randolph*, the United States Supreme Court held that the search of a couple's shared residence could not be based on the wife's consent when the husband was physically present and expressly refused consent.[7] The *Randolph* Court drew an admittedly "fine line" between two scenarios, stating: "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out."[8] In this case, Burke was not "at the door," and he voiced no objection to a search. Although Burke does not argue that the officers had a duty to ask for his consent, we note the *Randolph* Court's statement that police officers are not required to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received.[9] Burke's wife's consent was sufficient to allow the officers to search the residence.[10]

We point out that the *Randolph* Court noted that the "fine line" is justified "[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the

---

[4] *Randolph*, supra at 120.

[5] Id. at 106, 114; *Preston v. State*, 296 Ga. App. 655, 656 (675 SE2d 553) (2009).

[6] (Citation and punctuation omitted.) *State v. Holloway*, 294 Ga. App. 683, 684-685 (670 SE2d 208) (2008).

[7] *Randolph*, supra at 120.

[8] Id. at 121; *Preston*, supra.

[9] *Randolph*, supra at 122.

[10] See *United States v. Matlock*, 415 U. S. 164, 172 (II) (94 SC 988, 39 LE2d 242) (1974).

sake of avoiding a possible objection.''[11] In the instant case, there is no evidence that the officers removed Burke from the home in order to avoid such an objection.[12]

Because the evidence does not demand a finding contrary to the trial court's determination, the decision denying Burke's motion to suppress is affirmed.[13]

*Judgment affirmed. Miller, C. J., and Phipps, J., concur.*

DECIDED FEBRUARY 23, 2010.

*Brandi D. Payne*, for appellant.
*Samuel H. Altman, District Attorney, John A. Fitzner III, Mary K. McKinnon, Assistant District Attorneys*, for appellee.

---

[11] *Randolph*, supra at 121.

[12] See *Randolph*, supra at 121-122; *Shuler v. State*, 282 Ga. App. 706, 708 (639 SE2d 623) (2006); see generally *United States v. Henderson*, 536 F3d 776, 783, n. 5 (7th Cir. 2008). Compare *Preston*, supra (search pursuant to absent co-tenant's consent unreasonable where, inter alia, there was evidence police avoided threshold colloquy with defendant regarding search by removing him from the entrance on an unrelated offense for the sake of avoiding possible objection).

[13] See *Holloway*, supra at 685.