**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 4, 2014**

# In the Court of Appeals of Georgia

A13A1980. PAYTON v. THE STATE.

MILLER, Judge.

Jonathan Michael Payton was charged with possession of cocaine (OCGA §§ 16-13-30 (a)), possession of alprazolam (OCGA § 16-13-30 (a)), aggravated assault (OCGA § 16-5-21), simple battery (OCGA § 16-5-23), and possession of less than one ounce of marijuana (OCGA § 16-13-30 (j) (1)). Payton filed a motion to suppress the drugs seized from his bedroom in a warrantless search conducted by police officers pursuant to the homeowner's consent. The trial court denied Payton's motion, finding that Payton was a guest, not a tenant, in the homeowner's house and that, as a result, the homeowner was authorized to consent to the search of Payton's bedroom. This Court granted Payton's application for interlocutory review, and on appeal, he contends that the homeowner did not have common authority over his bedroom

because he was paying rent, and therefore, the police officers did not have valid consent to conduct the search. For the reasons set forth below, we affirm.

> In considering an appeal from the denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.

(Footnotes omitted.) *Burke v. State*, 302 Ga. App. 469 (691 SE2d 314) (2010).

So viewed, the evidence shows that in August 2011, and for two years prior to this time, Payton lived in a residence at 186 Candler Road in Jones County. Ennis Grady Odom owned the residence, and although he considers Payton to be his grandson, there is no blood relation between the two. Odom, two other unrelated individuals, and Payton all had separate bedrooms in the house. Payton's girlfriend also resided at the house and shared a bedroom with Payton.

On August 5, 2011, Odom heard a rumbling coming from inside his house, and he then saw Payton and his girlfriend fighting as they came out of their bedroom. According to Odom, Payton and the girlfriend fought down the hallway and into the kitchen, where she grabbed two knives and slashed at Payton, causing several minor wounds. Odom then called the police.

The responding police officer spoke to Payton, his girlfriend, and Odom, who gave a written statement to police. According to the police officer, Payton appeared to be under the influence of drugs or alcohol because he was jumpy, he exhibited dramatic mood swings, and his eyes were bloodshot and glossy. During his investigation, the police officer noticed fresh blood on Payton's hand, broken furniture, blood in the kitchen and on a broken chair, and a few knives on the kitchen countertop. The officer then arrested Payton and his girlfriend for domestic violence.

After putting Payton into a patrol car, the police officer expressed to Odom that Payton might be involved with drugs and asked for permission to search Payton's room. The police officer testified that Odom expressed frustration with Payton and his girlfriend because they lived in his house and ate his food without paying for anything. The police officer testified that he understood Odom's statement to mean that neither Payton nor his girlfriend paid any rent. The police officer further testified that Odom then gave permission to search Payton's room. The police officer used a drug dog to assist in the search of Payton's room, and the drug dog alerted to a speaker in Payton's room. The police officer found cocaine and alprazolam inside the speaker and a marijuana cigarette in an ash tray on a dresser.

Payton was subsequently charged with possession of cocaine, alprazolam, and marijuana, as well as aggravated assault and simple battery. Payton filed a motion to suppress the drugs found in his room, arguing that the police officer was required to ask him for consent to search since he was present at the scene. Following a hearing, the trial court denied Payton's motion. In so ruling, the trial court specifically found that Payton was a guest, not a tenant, in Odom's house and that, as a result, Odom had the authority to consent to a search of Payton's room. This appeal followed.

On appeal,[1] Payton contends that the trial court erred in denying his motion to suppress because the police officers lacked exigent circumstances or valid consent to conduct the warrantless search. Specifically, he argues that the trial court erred in

---

[1] The State argues that the trial court erred in overruling its procedural objection to Payton's motion to suppress because it was filed more than 10 days after his arraignment. OCGA § 17-7-110 requires that "[a]ll pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court." Although the State argues that, under Uniform Superior Court Rule 31.1, the trial court was required to issue a written extension of time to file a pre-trial motion, OCGA § 17-7-110 does not have a writing requirement and the statute controls. See *State v. Mojica*, 316 Ga. App. 619, 622 (2), n.8 (730 SE2d 94) (2012). Therefore, the trial court was not required to issue a written extension of time in order to consider Payton's motion to suppress. Given that the State presented evidence at the suppression hearing, the State was not prejudiced by the untimely motion. Therefore, the trial court did not abuse its discretion in considering Payton's untimely motion. Id. at 622-623 (2).

4

concluding that he was a guest in Odom's house because Odom's testimony at the

suppression hearing established that he paid rent. We disagree.

1. *Odom, as head of the household, had the authority to consent to the search*.

> The Fourth Amendment states that people shall be secure in their person, houses, papers, and effects, against unreasonable searches and seizures. Fundamentally, there exists a justified expectation of privacy against unreasonable intrusions into the home. Therefore, an unconsented police entry into the home constitutes a search within the meaning of the Fourth Amendment.

(Citation and punctuation omitted.) *Hunt v. State*, 302 Ga. App. 578, 581 (691 SE2d

368) (2010). A police officer's warrantless search of a house without consent or

exigent circumstances "constitutes an unjustified, forcible intrusion that violates the

Fourth Amendment." (Footnote omitted.) *Leon-Velazquez v. State*, 269 Ga. App. 760,

761 (1) (605 SE2d 400) (2004).

While a person may have a reasonable expectation of privacy, a warrantless

search of a residence may nevertheless "be authorized by the consent of any person

who possesses common authority over *or sufficient relationship to the premises to be*

*searched*." (Citations and punctuation omitted; emphasis supplied.) *Smith v. State*,

264 Ga. 87, 87-88 (2) (441 SE2d 241) (1994); see also *Rockholt v. State*, 291 Ga. 85,

88 (2) (727 SE2d 492) (2012) (although defendant, as an overnight guest of a

5

residence, has a reasonable expectation of privacy, the resident owner's consent to a search gives officers the legal authority to conduct a warrantless search). The "common authority over the premises" is one independent prong unrelated to the second prong of "sufficient relationship to the premises." *State v. West*, 237 Ga. App.

> 185, 185-186 (514 SE2d 257) (1999). As a result, it is the general rule that the voluntary consent of the head of a household to the search of premises owned or controlled by such head of the household is sufficient to authorize a search of the premises without a search warrant, and such search does not violate the constitutional prohibition against unreasonable searches and seizures.

(Punctuation omitted.) *Tolbert v. State*, 224 Ga. 291, 293 (2) (161 SE2d 279) (1968); see also *Warner v. State*, 299 Ga. App. 56, 58 (1) (681 SE2d 624) (2009). A landlord, however, cannot give consent to a search of his tenant's quarters. *Warner*, supra, 299 Ga. App. at 58 (1). Consequently, whether Payton was a guest or a tenant is a factual determination that is reserved for the trial court, and we must sustain the trial court's resolution of this issue if there is any evidence to support it. Id.

In this case, some evidence supported the trial court's finding that Payon was a guest rather than a tenant. The responding police officer testified that Odom told him that Payton and his girlfriend "don't pay anything" for living at his house and eating his food. Additionally, Payton told officers that he was unemployed at the time.

6

Although Odom testified at the motion to suppress hearing that Payton paid $75 a week in rent, Odom admitted that he had no documentary proof to show that Payton actually paid rent. Based on this evidence, along with Odom's admission that he would do what he could to help Payton, the trial court was not required to accept Odom's testimony that Payton paid rent. *Tobias v. State*, 319 Ga. App. 320, 323 (1) (735 SE2d 113) (2012) (at a motion to suppress hearing, a trial court has no obligation to believe a witness's testimony, even in the absence of contradictory testimony). As a result, the trial court was authorized to believe the police officer's testimony and reject Odom's testimony in concluding that Payton was Odom's guest.

Since the trial court found that Payton was a guest in Odom's house, Odom, as the resident homeowner, was authorized to consent to the search of Payton's bedroom, regardless of whether Payton was an adult, locked his door, or kept Odom out of his bedroom. See, e.g., *Warner*, supra, 299 Ga. App. at 58-59 (1) (evidence showing that parents were heads of household, as opposed to landlords, supported trial court's finding that parents were authorized to consent to a search of their college-age son's bedroom); *West*, supra, 237 Ga. App. at 186-187 (resident homeowner had the right to enter the room of her adult son who did not pay rent, regardless of factors such as access or mutual use, and could assign that right to

police officers); *Howard v. State*, 207 Ga. App. 125, 126 (1) (427 SE2d 96) (1993) (defendant's mother, who co-owned residence with defendant's father, had a sufficient relationship to premises to consent to warrantless search of her adult son's bedroom because there was no landlord-tenant relationship between the defendant and his mother). Moreover, there is no evidence that Odom was coerced or placed under duress in order to obtain that consent. See *Brown v. State*, 288 Ga. 404, 406-407 (2) (703 SE2d 624) (2010) (evidence did not show that householder's consent to search was obtained as the result of duress or coercion).

2. *Police officers reasonably believed Odom had the authority to consent to the search*.

Even if Odom did not have the authority to consent to a search of Payton's bedroom, the search was nevertheless reasonable. In *Illinois v. Rodriguez*, 497 U. S. 177 (110 SCt 2793, 111 LE2d 148) (1990), the United States Supreme Court held that a search is reasonable when it is based on the consent of a person whom officers reasonably, but erroneously, believe has authority to consent to the search. Id. at 186 (III) (B). As the Supreme Court explained in *Rodriguez*, the Fourth Amendment does not require that officers "always be correct, but that they always be reasonable." Id. at 185 (III) (B). This Court has endorsed the *Rodriguez* principle in several decisions.

See, e.g., *State v. Parrish*, 302 Ga. App. 838, 840 (691 SE2d 888) (2010) ("A warrantless search based upon the consent of a third party will be deemed valid when, at the time of entry, police reasonably believe that the third party possesses common authority over the area to be searched.") (citation omitted); *Warner*, supra, 299 Ga. App. at 59 (1) ("[E]ven if the parents in fact did not have the authority to consent to a search of Warner's bedroom, the circumstances led the police to reasonably believe that the parents had that authority, and therefore the search was valid.") (citation and footnote omitted); *Pike v. State*, 265 Ga. App. 575, 577 (1) (594 SE2d 753) (2004) ( "[A] warrantless search based on unauthorized consent could nonetheless be upheld if the law enforcement officer conducting the search reasonably (albeit erroneously) believed the consent given was valid.") (citation and punctuation omitted); *Ford v. State*, 214 Ga. App. 284, 286-287 (3) (447 SE2d 334) (1994) (en banc) (same).

In this case, Odom told the responding police officer that he owned the house and that Payton lived at the house rent-free. As a result, the police officer reasonably believed that Odom had the authority to consent to the warrantless search. See *Warner*, supra, 299 Ga. App. at 59 (1) (officers reasonably believed that parents had the authority to consent to a search of the defendant's bedroom); *Pike v. State*, 265 Ga. App. 575, 577 (1) (594 SE2d 753) (2004) (officers reasonably believed that the

9

defendant's brother, who owned the residence but did not have access or control to the defendant's bedroom, had the authority to give consent to search the residence, including the defendant's bedroom, and therefore, the search was valid).

3. *Police officers were not required to give Payton an opportunity to object to the search.*

Payton's argument that *Georgia v. Randolph*, 547 U. S. 103 (126 SCt 1515, 164 LE2d 208) (2006), and *Preston v. State*, 296 Ga. App. 655 (675 SE2d 553) (2009), require a different result is without merit. In *Randolph*, the United States Supreme Court held that where co-residents of a house are present, and one consents to a search while the other objects, the search is unreasonable. 547 U. S. at 120 (II) (D). The *Randolph* Court, however, drew an admittedly "fine line" between two scenarios stating: "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, *nearby but not invited* to take part in the threshold inquiry, loses out." (Emphasis supplied.) Id. at 121 (II) (E); see also *Preston*, supra, 296 Ga. App. at 658. The *Randolph* Court held that this "fine line" was justified so long as there was no evidence that the police removed the potentially objecting tenant for the sake of avoiding a possible objection. *Randolph*, supra, 547

10

U. S. at 121 (II) (E). Although Payton argues that the police officers should have given him the opportunity to object to the search, nothing in *Randolph* suggests that the police must offer such an opportunity. To the contrary, the *Randolph* Court expressly held that police officers are not required to required "to find a potentially objecting co-tenant before acting on the permission they had already received." Id. at 122 (II) (E). Analyzing *Randolph*, the *Preston* Court made a limited holding that "if an occupant is at the door, . . . , then the officers must inform that occupant that they are conducting a search pursuant to a co-occupant's consent" in order for the search to be reasonable. *Preston*, supra, 296 Ga. App. at 658.

In this case, the officers did not arrive at the residence to execute a search based upon a co-occupant's consent, and therefore *Preston* is distinguishable. Although Payton had been arrested and put inside the patrol car when the officers obtained consent, there is no evidence that such action was done for the purpose of avoiding a possible objection to a search. Consequently, Odom's consent to search gave the police officers legal authority to search Payton's room. See *Brown v. State*, 288 Ga. 404, 406 (2), n.3 (703 SE2d 624) (2010) (in the absence of evidence that the defendant expressly object to the search or that police removed him from the house for the sake of avoiding a possible objection, the consent given by the defendant's

11

sister, who owned the home, authorized the warrantless search); *Burke*, supra, 302 Ga. App. at 470-472 (although officers took defendant from home, the search of the home was authorized based upon wife's consent because there was no evidence that officers removed defendant in order to avoid an objection to the consent); *cf. Rockholt*, supra, 291 Ga. at 88 (2) (defendant was physically present but failed to express any refusal of consent or any objection to a police search). Accordingly, we affirm the trial court's decision to deny Payton's motion to suppress.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*