IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 14, 2020 Session

## DEBRA SMITH ET AL. v. RONNIE OUTEN M.D. ET AL.

**Appeal from the Circuit Court for Benton County**
**No. 16-CV-8 Charles C. McGinley, Judge**

_____

### No. W2019-01226-COA-R3-CV

_____

In this health care liability action, the defendant pharmacists were sued for dispensing the wrong medication to the plaintiff. The defendants then alleged comparative fault against Appellant doctor, who was treating the patient. The plaintiff amended her complaint to allege fault against the doctor. However, the doctor was eventually granted summary judgment when no expert was produced to support the claim. Appellant doctor then sought sanctions pursuant to Tennessee Code Annotated section 29-26-122(d)(3) on the basis that, inter alia, the defendants' certificate of good faith was supported by the written statement of an incompetent expert witness. The trial court denied the motion for sanctions. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Brigham Alexander Dixson and J. Eric Miles, Nashville, Tennessee, for the appellant, Ronnie Outen, M.D.

Minton Philip Mayer and Colleen M. Schultz, Memphis, Tennessee, for the appellees, Herndon Pharmacy, PLLC, and R. Stephen Herndon.

Suzanne G. Marsh, Daniel Lynch Nolan, Jr., Clarksville, Tennessee, for the appellees, Leitner, Williams, Dooley & Napolitan, PLLC.

## OPINION

Debra and Anthony Smith ("Plaintiffs") filed a complaint in the Benton County Circuit Court ("the circuit court") in 2016 against Herndon Pharmacy, LLC and R. Stephen Herndon (together, "Defendants"), alleging that Defendants had dispensed the wrong medication, Mirtazapine, to Mrs. Smith, causing her injury.[1] In her Complaint, Mrs. Smith alleged that her prescribing physician, Ronnie Outen, M.D. ("Dr. Outen" or "Appellant"), "immediately stopped [her] from taking Mirtazapine any further" when he realized she had been given it erroneously. Defendants, by and through counsel, Bruce D. Gill of Leitner, Williams, Dooley & Napolitan, PLLC (together with Mr. Gill, "Appellees"), filed an answer alleging comparative fault as to Appellant.[2] Specifically, based in part on Mrs. Smith's assertion in her complaint that Appellant ordered her to immediately stop taking the Mirtazapine rather than taper off of it, Defendants alleged that Appellant breached his duty of care to Mrs. Smith, resulting in her injuries.[3] Pursuant to Tennessee Code Annotated section 29-26-122, Mr. Gill filed a certificate of good faith to support Defendants' allegation of non-party comparative fault against Appellant in their answer. The certificate stated in relevant part:

1. I have consulted with one (1) or more experts, which may include the Defendant filing the Certificate of Good Faith, who have provided a signed written statement confirming that upon information and belief they:

   (A) Are competent under Tenn. Code Ann. § 29-26-115 to express opinion(s) in the case; and

   (B) Believe, based on the information reviewed concerning the care and treatment of the Plaintiff for the incident(s) at issue, that there is a good faith basis to allege such fault against another consistent with the requirements of Tenn. Code Ann. § 29-26-115.

Plaintiffs thereafter amended their complaint to name Appellant as a defendant, based on Appellees' and Defendants' allegations of comparative fault against Appellant. Appellant denied fault in his answer to the amended complaint and ultimately moved for

---

[1] Though Mr. Herndon owns Herndon Pharmacy and is a named defendant, he did not personally dispense the prescriptions at issue to Mrs. Smith—rather, some of his employees did.

[2] Defendants are on record as appellees in this appeal, but their brief states that they appear solely to state that there are no remaining issues involving them, and they reserved their right to appear at oral argument. Plaintiffs declined to file a brief and to participate in oral argument as appellants, given they already settled.

[3] It is undisputed that Appellant prescribed Mrs. Smith Mirapex, and that Herndon Pharmacy erroneously dispensed Mirtazapine to her on multiple occasions. Further, while the record contains some inconsistencies regarding the manner in which Mrs. Smith stopped taking the Mirtazapine, it seems undisputed that Appellant advised Mrs. Smith to cease taking the Mirtazapine upon realizing she had been given the wrong medication.

summary judgment in the circuit court, after neither Plaintiffs nor Defendants disclosed expert witnesses who would offer testimony against Appellant. Neither Defendants nor Plaintiffs filed documents in opposition to Appellant's motion for summary judgment, and the circuit court granted the motion in an agreed order on November 19, 2018, dismissing Appellant from the case with prejudice. Ultimately, Plaintiffs and Defendants settled, and the case against Defendants was also dismissed with prejudice on or about May 21, 2019.

Prior to the dismissal, however, on December 13, 2018, Appellant filed a motion to compel Defendants to disclose the signed written statement of the expert relied on in executing Mr. Gill's certificate of good faith, pursuant to section 29-26-122(d)(2). Defendants disclosed their expert statement,[4] which was signed by Mr. Herndon. Appellant then filed a motion in the circuit court to deem the certificate of good faith insufficient and impose sanctions on Appellees for violating sections 29-26-122(d)(2) and (3). Therein, Appellant argued that Mr. Herndon's statement was the sole and inadequate basis for Mr. Gill's certificate of good faith, because Mr. Herndon is unqualified to testify about the standard of care applicable to a family physician such as Appellant or medical causation of injuries, as admitted in his own deposition; Mr. Herndon lacked a factual basis for alleging comparative fault against Appellant; and his written statement failed to meet the requirements of section 29-26-122. Appellees responded, asking the circuit court to deem the certificate of good faith sufficient and deny the motion for sanctions. According to Appellees, Mr. Herndon was competent to provide the written statement underlying the certificate of good faith, and both his written statement and the certificate of good faith complied with the law.

The circuit court heard arguments on May 21, 2019 on Appellant's motion for sanctions, and entered an order denying the imposition of sanctions on June 10, 2019. The trial court found that while it would have been better practice for Appellees to have sought a medical professional's opinion to support the certificate of good faith, the certificate based on Mr. Herndon's opinion nonetheless sufficiently complied with section 29-26-122 and exhibited no evidence of bad faith to support a finding that section 29-26-122 was violated. The circuit court gave special weight to Mr. Gill's affidavit in making its decision, and noted that as soon as it was discovered that Appellant bore no responsibility in the case, summary judgment was agreed to. Appellant then filed a notice of appeal.

While this appeal was pending, on September 18, 2019, Plaintiffs gave notice to the circuit court of the filing of the demand package that Plaintiffs' counsel sent to Defendants' insurance company on November 13, 2015, and the insurance company's response to the demand package, sent to Plaintiffs' counsel on December 4, 2015 (collectively, "the Settlement Documents"). The cover page on the demand package states as follows:

This is a Demand Letter sent by Attorney David R. Grimmett of the Grimmett

_____

[4] At this point, Defendants had retained new counsel.

- 3 -

Law Firm, PLLC. It is sent pursuant to Rule 408 of the Tennessee Rules of Evidence. Under no circumstances should it be considered admissible as part of the claim contained herein. The purpose of this Demand Letter is to resolve litigation which is currently pending or about to begin.

Similarly, the insurance company's response letter stated that its response was to be used for settlement purposes only. The demand package also included a summary of the healthcare services that Mrs. Smith received, which was labeled as created by Plaintiffs' counsel. On September 23, 2019, Appellant filed a supplemental designation of the record, designating the Settlement Documents for inclusion in the record on appeal. Appellees responded with a Tennessee Rule of Civil Procedure Rule 12.06 motion to strike Plaintiffs' notice of filing the Settlement Documents and a response to Appellant's designation of the Settlement Documents as part of the appellate record. Appellant attached an affidavit of Plaintiffs' counsel to his response, wherein Plaintiffs' counsel swore that he had provided Defendants' insurance carrier with a complete copy of Appellant's chart for Mrs. Smith. Appellees then made another Rule 12.06 motion to strike Plaintiffs' counsel's affidavit. The circuit court heard oral argument on the motions to strike on October 21, 2019, and entered an order denying them on November 6, 2019. The court gave no reasoning for its decision. The Settlement Documents are therefore included in the record on appeal.

### ISSUES PRESENTED

Appellant and Appellees each raise issues on appeal, which we consolidate and restate as follows.[5]

1. Whether the circuit court erred in denying Appellant's motion to deem the certificate of good faith insufficient and impose sanctions.

---

[5] Appellant specifically raises the following issues:

1. Whether the circuit court erroneously interpreted Tennessee Code Annotated section 29-26-122 in ruling on Appellant's motion to deem the certificate of good fair insufficient and impose sanctions.
2. Whether the circuit court erroneously denied Appellant's motion to deem the certificate of good fair insufficient and impose sanctions.

Appellees raise the following three additional issues:

1. Whether the circuit court abused its discretion in denying Appellant's motion to deem the certificate of good fair insufficient and impose sanctions.
2. Whether the circuit court properly considered and relied on Mr. Gill's affidavit and other materials properly before the court in denying Appellant's motion for sanctions.
3. Whether the circuit court properly included the Rule 408 settlement demand package from the plaintiff patient and the response from the liability carrier in the record on appeal.

2. Whether the circuit court properly included the Settlement Documents in the record on appeal.

## DISCUSSION

This case provides this Court with one of the first opportunities to consider a motion for sanctions under Tennessee Code Annotated section 29-26-122. *See also **Kerby v. Haws***, No. M2011-01943-COA-R3-CV, 2012 WL 6675097, at *7 (Tenn. Ct. App. Dec. 20, 2012) (involving this issue; discussed in detail, *infra*); ***Jackson v. HCA Health Servs. of Tennessee, Inc.***, 383 S.W.3d 497, 506 (Tenn. Ct. App. 2012) (same). The resolution of this case therefore depends on the proper interpretation of section 29-26-122. Statutory interpretation is a question of law, and we review it de novo without a presumption of correctness. ***Kerby***, 2012 WL 6675097, at *7 (citing ***Gleaves v. Checker Cab Transit Corp., Inc.***, 15 S.W.3d 799, 802 (Tenn. 2000); ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 924 (Tenn. 1998)). In interpreting a statute, we must give effect to the legislature's intent. ***Id.*** (internal citations omitted). "The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." ***Id.*** (citing ***State v. Blackstock***, 19 S.W.3d 200, 210 (Tenn. 2000)).

Our analysis therefore must begin with the language of the relevant statute. In pertinent part, section 29-26-122(d) provides as follows:

> (2) If a party in a health care liability action subject to this section prevails on the basis of the failure of an opposing party to offer any competent expert testimony as required by § 29-26-115, the court may, upon motion, compel the opposing party or party's counsel to provide to the court a copy of each such expert's signed written statement relied upon in executing the certificate of good faith. The medical experts may be compelled to provide testimony under oath, as determined by the court, for the purposes of determining that party's compliance with subsection (a) or (b).
> (3) If the court, after hearing, determines that this section has been violated, the court shall award appropriate sanctions against the attorney if the attorney was a signatory to the action and against the party if the party was proceeding pro se. The sanctions may include, but are not limited to, payment of some or all of the attorney's fees and costs incurred by a party in defending or responding to a claim or defense supported by the non-complying certificate of good faith. If the signatory was an attorney, the court shall forward the order to the board of professional responsibility for appropriate action. Upon proof that a party or party's counsel has filed a certificate of good faith in violation of this section in three (3) or more cases in any court of record in this state, the court shall, upon motion, require the party or party's counsel

- 5 -

to post a bond in the amount of ten thousand dollars ($10,000) per adverse party in any future health care liability case to secure payment of sanctions for any violation of this section in such case.

Thus, section 29-26-122(d) provides a mechanism for a party to obtain the statement underlying a certificate of good faith when the party prevails at the summary judgment stage on the basis of the opposing party's failure to offer competent expert proof. The purpose of obtaining the written statement is to "determin[e] th[e] opposing party's compliance with subsection (a) or (b)." Tenn. Code Ann. § 29-26-122(d)(2). The dismissal of the lawsuit at the summary judgment stage itself therefore provides no basis for sanctions; it merely triggers a party's ability to obtain additional information upon which to determine if the good faith certificate requirement was violated.

Subsections (a) and (b) contain the good faith certificate requirement applicable in healthcare liability actions. *See* Tenn. Code Ann. § 29-26-122(a) (involving the duty of the plaintiff); (b) (involving the duty of the defendant raising the fault of a non-party). Subsection (b) is the relevant provision in this case:

> Within thirty (30) days after a defendant has alleged in an answer or amended answer that a non-party is at fault for the injuries or death of the plaintiff and expert testimony is required to prove fault as required by § 29-26-115, each defendant or defendant's counsel shall file a certificate of good faith stating that:
>
> (1) The defendant or defendant's counsel has consulted with one (1) or more experts, which may include the defendant filing the certificate of good faith, who have provided a signed written statement confirming that upon information and belief they:
>
> > (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and
> > (B) Believe, based on the information reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to allege such fault against another consistent with the requirements of § 29-26-115; . . . .[6]

---

[6]The statute goes on to provide an additional method of satisfying the good faith requirement:

> (2) The defendant or defendant's counsel has consulted with one (1) or more medical experts, which may include the defendant filing the certificate of good faith, who have provided a signed written statement confirming that upon information and belief they:
>
> > (A) Are competent under § 29-26-115 to express an opinions or opinions in the case; and

Tenn. Code Ann. § 29-26-122(b); *see also* Tenn. Code Ann. § 29-26-115 (providing rules regarding the necessity and competency of experts in health care liability actions). Thus, if "this section[,]" *i.e.*, section 29-26-122, is violated, the court "shall" award sanctions, which "may" include attorney's fees. Tenn. Code Ann. § 29-26-122(d)(3).

Appellant contends that Appellees in this case violated section 29-26-122 in a multitude of ways because the written statement relied on in support of the certificate of good faith was insufficient. In particular, Appellant argues that unless Appellees acted in "complete compliance" with section 29-26-122 (and by incorporation therein, section 29-26-115), he is entitled to an award of sanctions. In contrast, Appellees assert that they met both the letter and the spirit of section 29-26-122's good faith requirement, as mandated by the plain language of the statute and the caselaw interpreting it.

In order to decide the issues in this case, it is important that we consider section 29-26-122(d)(3) as part and parcel of the good faith certificate requirement and the Tennessee Healthcare Liability Act ("THCLA") as a whole. Indeed, "[w]e do not read statutes in isolation and are required to construe them 'as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose.'" *Griffin v. Campbell Clinic, P.A.*, 439 S.W.3d 899, 903 (Tenn. 2014) (quoting *Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 750 (Tenn. 2001)). As our high court explained,

> The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning.

*Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (internal citations omitted).

---

(B) Believe, based on the information reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the information reasonably available to the defendant or defendant's counsel; and that, despite the absence of this information, there is a good faith basis for alleging such fault against another, whether already a party to the action or not, consistent with the requirements of § 29-26-115.

The certificate filed in this case did not specifically rely on this subsection and we therefore do not consider this portion of the statute.

The purpose of the THCLA generally and the certificate of good faith requirement specifically has been previously discussed by this Court:

> One of the purposes of the certificate of good faith is to weed out frivolous lawsuits before any party incurs substantial litigation expenses. The filing of a certificate of good faith indicating that an expert has reviewed the claims and has certified that they are taken in good faith "satisfies the goal of attempting to ensure that suits proceeding through litigation have some merit."

*Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215, at *8 (Tenn. Ct. App. Aug. 31, 2012), *perm. app. denied* (Tenn. Dec. 10, 2013) (internal citations omitted) (citing *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 639 (E. D. Tenn. 2010)). "The filing of a certificate of good faith indicating that an expert has reviewed the claims and has certified that they are taken in good faith 'satisfies the goal of attempting to ensure that suits proceeding through litigation have some merit.'" *Kerby*, 2012 WL 6675097, at *4 (quoting *Jenkins*, 683 F. Supp. 2d at 639). Indeed, the language of the statute itself provides illumination into its purpose: to ensure that a good faith basis exists for the filing of the lawsuit. In evaluating the written statement created in support of section 29-26-122(b), we are expressly directed to consider the "good faith" of the party asserting the cause of action. *See also id.* (stating that the purpose of making the written statement discoverable is "in order to give the court the tools needed to determine whether the certificate of good faith was itself executed in good faith"). A standard of "good faith" therefore governs Appellees' conduct in this case. *Id.*

The term "good faith" is not defined in section 29-26-122 or elsewhere in the THCLA. Generally, "[t]he words used in a statute are to be given their natural and ordinary meaning. If the language of the statute is clear and unambiguous, we apply its plain meaning in its normal and accepted use." *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 219 (Tenn. 2019) (internal citations omitted). "Good faith," however, defies precise definition:

> The duty of good faith is not specifically defined by our courts. As explained in the *Tennessee Practice Series*:
>
> > The term "good faith" resists an exact definition . . . because it arises in various contexts and its meaning will vary accordingly. Indeed, "good faith" is "a term frequently defined in the negative," i.e., it represents the absence of bad faith. Another authority makes these helpful observations about the "good faith" concept:
> >
> > > [G]ood faith is an "excluder." It is a phrase

- 8 -

without general meaning (or meanings) of its own and serves to exclude a wide range of heterogeneous forms of bad faith. In a particular context the phrase takes on specific meaning, but usually this is only by way of contrast with the specific form of bad faith actually or hypothetically ruled out.

*Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 769–70 (Tenn. Ct. App. 2015) (quoting 21 *Tenn. Prac. Contract Law & Practice* § 8:33 (2014) (footnotes and internal citations omitted)). In other contexts, good faith requirements have not mandated perfection. *See, e.g.*, *Dry Creek Citizens Coal. v. Cty. of Tulare*, 70 Cal. App. 4th 20, 26, 82 Cal. Rptr. 2d 398, 402 (1999) (". . . [A] good faith effort . . . does not mandate perfection, nor does it require an analysis to be exhaustive.") (internal citations and quotation marks omitted); *State v. New*, 331 Ga. App. 139, 146, 770 S.E.2d 239, 245 (2015) (contrasting good faith with perfection); *Crosby v. State*, 241 S.C. 40, 44, 126 S.E.2d 843, 845 (1962) (stating that effective representation requires the attorney to act in good faith, but does not require perfection).

In the specific context of section 29-26-122, this Court has previously analogized the good faith requirement to a due diligence requirement. In *Jackson*, the pro se plaintiff filed a medical malpractice claim for injuries she allegedly sustained from a minimally invasive surgery, but did not attach a certificate of good faith to her complaint. 383 S.W.3d. at 499. She claimed that the good faith certificate requirement violated several constitutional provisions. In addressing this argument, it was necessary for the Court to discuss the duty actually imposed on plaintiffs[7] under section 29-26-122:

> [Tennessee Code Annotated § 29-26-122(a)(1)] merely requires proof of the plaintiff's due diligence, specifically that the plaintiff or his counsel consulted with at least one competent medical expert who provided a written statement confirming that the expert believes, based on the information available from medical records concerning the care and treatment of the plaintiff, that there is a good faith basis to maintain the action consistent with the requirements of Tennessee Code Annotated § 29-26-115.

*Id.* at 506.

This due diligence standard, the court held, was generally consistent with Rule 11.02 of the Tennessee Rules of Civil Procedure. *But see* **Kerby**, 2012 WL 6675097, at *7 n.4

---

[7] While *Jackson* was a case about a plaintiff's certificate of good faith under section 29-26-122(a), its reasoning is equally applicable to a defendant's good faith certificate under section 29-26-122(b).

(stating that Rule 11.02's specific procedural requirements are inapplicable when sanctions are sought under section 29-26-122(d)(3)). That rule provides that claims (1) cannot be presented for any improper purpose; (2) "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" and (3) "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Tenn. R. Civ. P. 11.02. Under Rule 11.02, "'[s]anctions are appropriate when an attorney submits a motion or other paper on grounds which he knows or should know are without merit, and a showing of subjective bad faith is not required.'" *Brown v. Shappley*, 290 S.W.3d 197, 203 (Tenn. Ct. App. 2008) (quoting *Hooker v. Sundquist*, 107 S.W.3d 532, 536 (Tenn. Ct. App. 2002)). Thus, we held that in order to meet the good faith standard required by section 29-26-122, there was no requirement "that a plaintiff have, at the commencement of the action, all of the expert testimony that may be needed on all issues," or "'conduct discovery and make a *prima facie* case prior to suit being filed.'" *Id.* at 505–506.

Although the court in *Jackson* was the first to elucidate the proper standard under which to judge a party's exercise of good faith in this context, *Kerby* was the first case to actually consider an appeal from the award of sanctions under section 29-26-122(d)(3). 2012 WL 6675097, at *1. In *Kerby*, the plaintiff filed a medical malpractice claim against her surgeon when she suffered infections after an operation. *Id.* She attached a certificate of good faith to her complaint, which certified that she had consulted with an expert who had provided the requisite underlying written statement. *Id.* at *2. It was later revealed that the cause of the plaintiff's infection could not have been the defendant-surgeon's conduct, and thus the parties agreed to the defendant's motion for summary judgment. *Id.* at *2–*3.

Like in this case, the defendant filed a motion to compel the plaintiff's expert's statement underlying the certificate of good faith, and a motion for sanctions against the plaintiff's counsel. *Id.* at *3. The defendant alleged that the plaintiff's counsel did not provide sufficient information to the expert for the expert to make his statement underlying the certificate of good faith. *See id.* The trial court awarded sanctions against the plaintiff's counsel. *Id.* This Court reversed because the plaintiff's attorney had filed the required certificate of good faith and underlying expert statement, and the attorney and the expert had properly relied on the plaintiff's medical records as the basis for the certificate of good faith and underlying statement. *Id.* at *5–*6. Moreover, we explained that "[t]he filing of a certificate of good faith with a malpractice complaint is not a guarantee that a claim will ultimately prove to be meritorious. It is rather a necessary requirement that must be satisfied before the claim can proceed further." *Id.* at *6. We emphasized that "[t]he fact that the medical expert's opinion may ultimately not be accepted is not a basis for concluding that the attorney violated the certificate of good faith statute." *Id.* at *5. Rather, whether the expert's opinion should ultimately be accepted is for the trial court to decide later in the litigation process. *See id.* at *6 ("The objections Dr. Haws raises as support for sanctions[, including that the expert statement underlying the certificate of good faith was

deficient,] are the type of issues that would normally be explored and resolved as the case moved forward. While some may then have been decided in Dr. Haws' favor, they do not constitute grounds for sanctions for violation of the requirements of the certificate of good faith statute.").

Applying the foregoing principles to the case-at-bar, we cannot conclude that the trial court erred in its decision to deny sanctions in this case. It is true that neither the plain language of section 29-26-112(d) nor the analogous Rule 11.02 require bad faith at a minimum in order to award sanctions. *See* Tenn. Code Ann. § 29-26-122(d)(2) & (3); ***Shappley***, 290 S.W.3d at 203. That is not to say, however, that bad faith is an entirely irrelevant consideration. *Cf.* ***Truth v. Eskioglu***, 781 F. Supp. 2d 630, 635 & n.8 (M.D. Tenn. 2011) (considering whether to excuse failure to file a good faith certificate on the basis of extraordinary cause and noting that "[n]othing indicates that [plaintiff's counsel] was acting in bad faith or employing procedural machinations to purposely delay the filing of the certificate of good faith"). And while the trial court may have relied in part on its finding that no bad faith was exhibited, we are often permitted to affirm the trial court's decision on other grounds. *See* ***Hill v. Lamberth***, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (in the summary judgment context); ***White v. Dozier***, No. M1999-02386-COA-R3-CV, 2000 WL 244229, at *2 (Tenn. Ct. App. Mar. 6, 2000) (quoting ***Hooks v. Hooks***, 771 F.2d 935, 945 (6th Cir.1985)) ("This appellate court 'may examine the record and affirm the [trial] court on other grounds if we determine that there exists no material controversy regarding matters of fact or law.'"). Moreover, the trial court's order makes clear that it found that Appellees "sufficiently compli[ed]" with section 29-26-122 so as to constitute a good faith effort.

Furthermore, although issues of statutory interpretation are reviewed de novo, as discussed above, the statute in this case requires a party to exercise good faith. "What is good faith depends, it is obvious, upon the facts and circumstances of each case." ***Gulf Ins. Co. v. Construx, Inc.***, No. M1999-02803-COA-R3-CV, 2001 WL 840240, at *19 (Tenn. Ct. App. July 26, 2001) (internal quotations omitted). Whether a party acted in good faith is therefore a factual question. ***Id.*** ("Good faith, or the lack thereof, as well as reasonableness, should be determined in the context of the specific factual situation involved."). Factual findings on this issue are therefore entitled to a presumption of correctness on appeal. *See, e.g.*, ***Daugherty v. Doyle***, No. M2013-02509-COA-R3-CV, 2014 WL 6453770, at *8 (Tenn. Ct. App. Nov. 17, 2014) (citing ***Dick Broad. Co., v. Oak Ridge FM, Inc.***, 395 S.W.3d 653, 671 (Tenn.2013); Tenn. R. App. P. 13(d)) ("The question of whether a party acted in good faith presents an issue of fact; issues of fact are entitled to a presumption of correctness."). Appellant must therefore show on appeal that the evidence preponderates against the trial court's finding that Appellees acted in good faith. *See* ***Spann v. Am. Exp. Travel Related Servs. Co.***, 224 S.W.3d 698, 707 (Tenn. Ct. App. 2006) (citation omitted) ("Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is

more probably true. Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.").

Importantly, both the certificate of good faith and the written statement in support thereof in this case comply with the plain language of the statute on their face. Here, there is no dispute that Appellees filed a certificate of good faith containing all of the necessary requirements.[8] *See* Tenn. Code Ann. § 29-26-122(b) (requiring a certificate attesting that counsel consulted with an expert who signed a statement that he or she believed that he or she was competent and that there was a good faith basis for the action). And when compelled by Appellant, Appellees properly supplied the written statement that had been obtained by Appellees in support of the certificate. Appellant asserts, however, that the written statement was facially invalid because it does not state verbatim that Mr. Herndon was "competent under § 29-26-115 to express an opinion or opinions in the case[.]" Tenn. Code Ann. § 29-26-122(b)(1)(A). However, in a prior case, we held that an expert's affidavit that served as the basis for the certificate of good faith was compliant with the statute even though it did not use the exact language from the statute, where the expert otherwise appropriately attested to his competence. *See Hinkle*, 2012 WL 3799215, at *9 ("By testifying that he was licensed as a medical doctor in the State of Tennessee, and that he is in active practice in the specialty of internal medicine in Madison County, Tennessee, he has demonstrated that he is competent to testify in this case under § 29-26-115."). Similarly, Mr. Herndon's letter lists his occupation, licensure, and familiarity related to the pharmacological issues present in the case. Under these circumstances, the evidence does not preponderate against the trial court's implicit finding that this purported deficiency did not rise to the level of a lack of good faith. Thus, Appellees appeared to comply with the statute by obtaining a written statement in support of their certificate of good faith that included the required information. *Cf. Kerby*, 2012 WL 6675097, at *5 ("[The attorney] provided a good faith certificate that matched these requirements. The attorney's responsibility is to certify specific things, and that is what he did. The expert's written statement includes the required information.").

Appellant asserts, however, that this Court should go further to evaluate the correctness of Mr. Herndon's assertions within the written statement. In particular, Appellant asks this Court to consider whether Mr. Herndon was actually competent to testify as to the necessary elements of any health care liability claim against Appellant. Essentially, Appellant asserts that a certificate of good faith violates section 29-26-122

---

[8] Appellant attacks the sufficiency of Defendants' compliance with the good faith certificate requirement not on the face of the certificate itself, but primarily on the ground that the underlying statement by Mr. Herndon was insufficient. Questions regarding whether the contents of a section 29-26-122 certificate of good faith are facially valid under either a strict or substantial compliance standard are therefore irrelevant to our analysis. *See Eiswert v. United States*, 619 F. App'x 483, 486–87 (6th Cir. 2015) (Noting that "the Supreme Court of Tennessee has not expressly addressed whether substantial compliance may suffice under section [29-26-]122" or "whether Tennessee law requires strict compliance under section [29-26-]122 . . . .").

unless the expert or experts who signed the written statement in support thereof were competent under section 29-26-115(b) to testify as to every necessary element contained in section 29-26-115(a). *See generally* Tenn. Code Ann. § 29-26-115(a) (requiring expert proof as to all the elements of a negligence claim in a health care liability context); § 29-26-115(b) (listing the requirements for an expert to be competent to testify to establish the elements in subsection (a)). If Mr. Herndon was not correct in his assertion of competence, then Appellant asserts that Appellees did not "complete[ly]" comply with section 29-26-122 and Appellant is entitled to sanctions. Although we have concluded above that Appellees complied with the express requirements of section 29-26-122, we note that a prior case involving this issue has considered whether the written statement provided in support of the certificate of good faith suffered from other types of underlying deficiencies that demonstrated a failure to exercise good faith. *See generally **Kerby***, 2012 WL 6675097, at *4–5 (rejecting each and every argument raised by the party seeking sanctions). As such, we will proceed to consider Appellant's arguments regarding the substance of the expert statement in this case as well.

To begin, there is no dispute that Appellees did not ultimately utilize Mr. Herndon as an expert to support their claim against Appellant at the summary judgment stage; Appellant impliedly asserts that Appellees' choice not to present Mr. Herndon at that time was due to his purported admission in his deposition that he could not render a medical diagnosis or opine on the standard of care applicable to physicians. We again note, however, that sections 29-26-122(d)(2) and (3) do not condition sanctions on simply the dismissal of the health care liability action based on a lack of expert proof; rather, this fact is simply the triggering mechanism that allows a party to seek additional information to determine if section 29-26-122 was violated. Had the Tennessee General Assembly wished to award sanctions solely based on a lack of proof at the summary judgment stage, it could have done so. *See **Chattanooga-Hamilton Cty. Hosp. Auth. v. UnitedHealthcare Plan of the River Valley, Inc.***, 475 S.W.3d 746, 758 (Tenn. 2015) ("[T]he legislature says what it means and means what it says."). We will not interpret their statute at odds with its plain language.

Moreover, controlling Tennessee caselaw has specifically held that a party may act in good faith prior to the filing of their lawsuit even without all of the proof necessary to ultimately prove their claim. *See **Jackson***, 383 S.W.3d at 506. And again, the certificate of good faith "is not a guarantee that a claim will ultimately prove to be meritorious," as the requirement occurs during the very initial stages of litigation. ***Kerby***, 2012 WL 6675097, at *6. Indeed, the plain language of section 29-26-122 defies such an interpretation. As previously discussed, the certificate of good faith mandates that the expert provide a written statement confirming his or her competency only "upon information and belief[.]" Thus, the plain language of section 29-26-122 requires only that the expert believe that he or she meets the competency requirement. *See **Black's Law Dictionary*** 175 (9th ed. 2009) (defining "belief" as "a state of mind that regards the existence of something as likely or relatively certain"). As such, nothing in the express language of section 29-26-122 requires

that a party asserting fault against another guarantee that his or her expert is competent or that the claim will ultimately prevail. Indeed, the duty with regard to competency is placed on the expert in section 29-26-122; neither the party asserting the fault of another nor his or her attorney has an express, specific responsibility related to competency other than obtaining the written statement and filing the certificate in compliance with the statute. In our view, then, Appellant's proposed standard would place a heavy burden on attorneys to judge an expert's belief in his or her own competency at an incredibly early stage of litigation in order to avoid running afoul of section 29-26-122 and being liable for sanctions. Such a burden, however, is a creation of Appellant's own design rather than a mandate of section 29-26-122.

Moreover, in the end, it is neither the expert nor the attorneys that decide competence, but the trial court. *See **Shipley v. Williams***, 350 S.W.3d 527, 551 (Tenn. 2011) ("In its role as a gatekeeper, the trial court is to determine (1) whether the witness meets the competency requirements of Tennessee Code Annotated section 29-16-115(b) and, (2) whether the witness' testimony meets the admissibility requirements of Rules 702 and 703."); ***Cox v. M.A. Primary & Urgent Care Clinic***, 313 S.W.3d 240, 260 (Tenn. 2010) ("[B]efore a trial court will admit testimony by a proffered expert witness about the standard of care applicable to a defendant, the trial court must be satisfied that the witness is competent to testify."). The purpose of the good faith certificate is not to usurp this gatekeeping role by requiring an attorney to guarantee that the expert he or she consults will ultimately be competent to opine as to every element of the cause of action. Rather, it is intended only to be a barrier against the prosecution of frivolous lawsuits. *See **Hinkle***, 2012 WL 3799215, at *8.

But a frivolous lawsuit is not one that simply does not achieve its end. Rather, "[a] frivolous argument is one that is not only against the overwhelming weight of legal authority but also entirely without any basis in law or fact or without any logic supporting a change of law." ***State v. Turner***, No. W1999-01516-CCA-R3-CD, 2000 WL 298696, at *2 (Tenn. Crim. App. Mar. 17, 2000). As the comments to our Rules of Professional Responsibility explain:

> The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they act reasonably to inform themselves about the facts of their client's case and the law applicable to the case and then act reasonably in determining that they can make good faith arguments in support of their client's position. *Such an action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.* The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification, or

reversal of existing law.

Tenn. R. Sup. Ct. 8, RPC 3.1, cmt. (emphasis added). Thus, the only thing that Mr. Herndon's statement was required to state with respect to competency was that he believed he was competent, which it did. And Defendants' lawyer properly certified that Mr. Herndon's statement contained the necessary statements. The fact that the claim did not ultimately prevail and questions regarding Mr. Herndon's competency were raised but not adjudicated does not necessitate a finding that section 29-26-122 was violated so as to support an award of sanctions.

And while we make no decision with respect to Mr. Herndon's ultimate competence as an expert witness, we note that he is a pharmacist whose professional responsibility includes counseling patients about medications and their side effects. *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 435 (Tenn. 1994) (quoting 7 Tenn. Comp. R. & Regs. 1140-3-.03(13) (1991)) ("Pursuant to the authority of T.C.A. § 63-10-102, the Board of Pharmacy of the State of Tennessee has promulgated certain rules and standards of practice. These rules provide: A pharmacist should, on dispensing a new prescription, explain to the patient or the patient's agent the directions for the use and a warning of all effects of the medication or device that are significant and/or potentially harmful. This communication should be performed in such a manner that will assure the proper use of the medication or device prescribed."). The injuries in this case were directly connected to the dispensation of medication. Under Tennessee Code Annotated section 29-26-115(b), health care professionals may be competent to testify in health care liability cases so long as they are licensed in a proper state for the appropriate amount of time and practice "a profession or specialty which would make the person's expert testimony relevant to the issues in the case." This is simply not a case where a party attempted to support its allegation of medical negligence with the "expert" testimony of a person completely outside of the medical profession. Mr. Herndon, as a licensed pharmacist specializing in the taking and dispensation of drugs, certainly qualifies as a health care professional practicing in a field "relevant to the issues in the case." *Id.*; *cf. Pittman*, 890 S.W.2d at 435 ("A significant factor affecting the pharmacy's duty was the knowledge that no warning had been given by the physician. Under these circumstances, it was reasonably foreseeable that [the patient] was at risk of injury. Consequently, the pharmacy, as well as the physician, owed her the duty to warn."); *Kerby*, 2012 WL 6675097, at *6 ("Although registered nurses may not qualify as an expert in some malpractice cases, medical records[, including those relied on in an expert's statement underlying a certificate of good faith,] typically include the observations of nurses and other health professionals who are not competent to serve as expert witnesses in cases involving their patients."). Therefore, the record supports that Mr. Herndon had a good faith basis to believe he was competent to assert fault against Appellant at the time the certificate of good faith was filed. Appellees therefore did not commit sanctionable conduct in relying on the written statement.

Appellant also argues that Mr. Herndon did not review sufficient information

concerning the care and treatment of Mrs. Smith in making his statement underlying the certificate of good faith. Unlike other portions of section 29-26-122 which expressly require that the expert consult the patient's medical records prior to making his or her written statement, the statute applicable in this case only requires Mr. Herndon to have consulted information "concerning the care and treatment of the plaintiff for the inciden[t] at issue" in writing his statement. Tenn. Code Ann. § 29-26-122(b)(1)(B); *compare* Tenn. Code Ann. 29-26-122(b)(1)(B) (applying when the fault of the health care provider is raised by the defendant in an answer or amended answer), *with* Tenn. Code Ann. § 29-26-122(a)(1) (applying to the plaintiff's allegation of fault against the defendant and expressly requiring that the plaintiff's expert base its opinion on "the information available from the medical records"). The record shows that at the time he executed his written statement, he had reviewed Mrs. Smith's complaint, the pharmacy records (which included a notation about the immediate cessation of Mirtazapine), and clinical information on Mirtazapine. He had also been informed by his employee about his employee's phone conversation with Appellant regarding the circumstances surrounding Appellant's discovery that Mrs. Smith had been accidentally dispensed the Mirtazapine. Thus, the record supports that Mr. Herndon sufficiently considered the information he had at the time regarding Mrs. Smith's care before executing his statement.

However, even if Mr. Herndon had also reviewed Mrs. Smith's medical records, there would still have been a good faith basis for him to allege fault against Appellant. As a threshold matter, it appears that Mrs. Smith's medical records are not actually in the record. The only record relating to her treatment contained in the Settlement Documents is a summary chart titled "Medical Summary," which states on the first page, "Created by: DAVID R. GRIMMET [i.e., Plaintiffs' counsel]." Plaintiffs' counsel's affidavit states, "In my November 13, 2015 Demand Package to Pharmacists Mutual Companies, I included a complete copy of Dr. Outen's chart for Debra Smith which I previously obtained from Dr. Outen's office." Appellant's brief likewise states, "Plaintiffs' counsel sent a demand package to the insurance carrier for Defendants, which included a complete copy of Dr. Outen's chart for Debra Smith." The implication, therefore, is that there are true and complete copies of Appellant's records on Mrs. Smith in the record. That does not appear to be the case. But assuming, *arguendo*, that the summary chart in the Settlement Documents is a complete copy of Appellant's chart for Mrs. Smith, based on our review of it, it contains no detail regarding how Appellant treated Mrs. Smith with respect to ceasing the Mirtazapine. Rather, it merely states, "[Mrs. Smith] has discontinued use of [Mirtazapine], but continues to experience severe anxiety," and goes on to list other symptoms she was experiencing. This provides no additional information that Mr. Herndon did not already have regarding how and why Mrs. Smith ceased taking the Mirtazapine when he executed his written statement. And it does not directly contradict the allegation in the complaint that Appellant directed Mrs. Smith to immediately cease taking the medication. Because we determine that these purported medical records would therefore not have impacted the outcome of the case, we need not decide whether it was error for the

trial court to admit them in the appellate record.[9]

Finally, Appellant also takes issue with the information the circuit court considered in making its findings, including Mr. Gill's affidavit and the fact that the parties quickly agreed to Appellant's motion for summary judgment upon realizing Appellant was not liable. First, Appellant did not ask for Mr. Gill's affidavit to be stricken and any suggestion on appeal that it could not be considered in any fashion is waived. It appears, however, that Appellant does not suggest that the affidavit should have been stricken, but that it was given too much weight by the trial court. The weight to be given to the evidence, however, is peculiarly within the trial court's domain. *See Hoover Motor Exp. Co. v. R.R. & Pub. Utilities Comm'n*, 195 Tenn. 593, 607, 261 S.W.2d 233, 239 (Tenn. 1953) ("The weight to be given particular evidence is a matter peculiarly within the province of the trier of the facts, unhampered by mechanical rules governing the weight or effect of evidence."). And the trial court's ultimate finding that Appellees acted in good faith is entitled to a presumption of correctness on appeal. *See Daugherty*, 2014 WL 6453770, at \*8. We have thoroughly reviewed the record and have determined that Appellees acted in good faith in raising allegations of fault against Appellant; the certificate of good faith and its underlying written statement therefore violated neither the letter nor the spirit of section 29-26-122. Consequently, the trial court did not err in denying Appellant's request for attorney's fees as a sanction.

## CONCLUSION

The judgment of the Benton County Circuit Court is affirmed and this cause is remanded for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant Ronnie Outen, M.D., for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[9] Furthermore, because Appellant designated the Settlement Documents for inclusion in the record on appeal in an apparent attempt to prove that Appellees had access to Mrs. Smith's medical records at the time they filed the good faith certificate, the relevant portion of the Settlement Documents for purposes of our review is only the purported medical records. Therefore, we need not address the other portions of the Settlement Documents.